HERBERT A. RICE, Atty. Gen. *ex rel. vs.* BOARD OF LICENSE COMMISSIONERS OF CENTRAL FALLS.

NOVEMBER 19, 1913.

PRESENT:    Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)   Intoxicating Liquors.   Licenses.   Schools.   Premises.*

Gen. Laws, 1909, cap. 123, § 2, provides that no license shall "be granted for the sale of such liquors in any building or place except taverns that were licensed on the 22nd day of May, 1908, within two hundred feet measured by any public travelled way of the premises of any public or parochial school."

*Held*, that the word "premises" as applied to a school under this statute, would properly include in addition to the room or building where the sessions were held, as appurtenant thereto, such portion, if any, of the land whereon it stood, as might be apportioned or designated, by proper authority for the use of the school, whether in common with others lawfully using said land or otherwise.

*(2) Intoxicating Liquors. Licenses. Schools. Premises.*

The upper part of a building was used as a church, while the basement was used as a parochial school. About the middle of the lot fronting on a highway there was a gate with a path leading to the front steps of the church. At the northwest corner of the lot on the highway were gates opening on a driveway leading back along the north side of the lot to the building. The children had been instructed by the school authorities not to play to the west of an imaginary line, parallel with the highway passing through a post in front of the building from north to south, in effect preventing them from playing in front of the church. The pupils might use either the path or driveway for access to the school.

Measuring from a point on the highway opposite the southwest corner of the licensed building along the highway to the northwest corner of the church lot the distance was 154 feet, and the prolongation of this line along the highway for 200 feet from the starting point would extend across the entrance to the path, but a line drawn from said point of beginning along the highway to said northwest corner of the church lot, then turning east and extending along and across said driveway to said stone post would measure 240 feet.

*Held*, that the basement, schoolyard driveway and path were all parts of the premises of the school, and a license granted to the building in question was consequently invalid.

*Held*, further, the fact that the driveway was used by other persons having business on the premises did not constitute it a "public travelled way," within the meaning of that term as used in Gen. Laws, 1909, cap. 123, § 2.

*(3) Proof.*

An actual use for a particular purpose is not shown by authority to so use.

*(4) Taverns. Intoxicating Liquors.*

"Taverns" must be houses where the principal business is the furnishing of food and sleeping accommodations, to be included within the exception to Gen. Laws, 1909, cap. 123, § 2.

*(5) Taverns. Intoxicating Liquors.*

To bring a house within the exception to Gen. Laws, 1909, cap. 123, § 2, it not only must have been a "tavern" on May 22, 1908, but it must be a real "tavern" on each occasion when a liquor license is granted, and it is not sufficient that it simply holds a tavern license when the liquor license is granted.

CERTIORARI. Heard on petition for writ and writ ordered to issue.

BAKER, J. This is a petition for a writ of certiorari filed October 20, 1913, by Herbert A. Rice, Attorney General, against John Pearson, Arnold A. Allenson and Jeremiah A. Sherman. The essential allegations of the petition are in

substance that said Pearson, Allenson and Sherman were before and on December 1, 1912, and are now the persons constituting the Board of License Commissioners of the City of Central Falls, in this State; that, claiming to act under the provisions of Sec. 2 of Chap. 123 of the Gen. Laws of the State, said commissioners prior to December 1, 1912, upon his application therefor, granted to one William E. Ryan of said city a second class liquor license to sell intoxicating liquors in a certain building or place in said city situate on the corner of Cross and High Streets, numbered 401 and 403, on said High Street, and 45 on said Cross Street; that afterwards on January 13, 1913, upon his application, said license was transferred by said board to one Issachar G. Giberson, and that afterwards, on or about May 24, 1913, upon his application, said board transferred said license to one John Klich, who now holds said license, and ever since said May 24, has sold and is now selling intoxicating liquors at said place under said license; that the building in and for which said license was granted at the time of granting thereof and of said transfers was and is now located "within two hundred feet, measured by a public travelled way," namely, said High Street, of the premises of St. Joseph's Parochial School, which is conducted by St. Joseph's Church, a corporation for religious purposes; that said Sec. 2 contains this provision, namely, "nor shall any license be granted for the sale of such liquors in any building or place, except taverns that were licensed on the twenty-second day of May, nineteen hundred eight, within two hundred feet, measured by any public travelled way of the premises of any public or parochial school;" that neither at the time of the granting of said license nor at present is there a licensed tavern in said building or place licensed to sell liquor as aforesaid; and that for the reasons above stated said commissioners had no right or authority to grant said license and the transfers thereof. Wherefore the petitioner asks that said writ be issued, commanding said commissioners to certify their records of their said

proceedings to this court, and that the record of the said several actions of said Board of License Commissioners in the premises may be quashed.

By their answer said commissioners admit all of the foregoing allegations to be true except the one which says that said building or place is within two hundred feet of the premises of said parochial school, measured by a public travelled way, which allegation they specifically deny. They state in addition that the building in which the license was granted was a licensed tavern on May 22, 1908.

The question in dispute is as to the distance of said building or place licensed as aforesaid from the premises of said parochial school, measured by any public travelled way. There is practically no controversy as to the facts, the real question being as to the meaning to be given to the word "premises" upon the evidence in the case.

(1)   The evidence shows that said St. Joseph's Church, of Central Falls, owns a parcel of land in said city bounded westerly on High Street 89.32 feet, measuring on its northerly side 181.54 feet, on its easterly side 88.73 feet, and on its southerly side 194.38 feet. Upon this lot said corporation has erected a building, the upper part of which is used as a church, while the lower part or basement has been for five years, and is now occupied and used by the parochial school of said St. Joseph's Church. This building is rectangular in shape, has its western or front end upwards of eighty feet back from High Street, is midway between the northerly and southerly sides of the lot, leaving a considerable space on each side of the building for yard room, and extends back nearly to the east end of the lot. About the middle of the lot fronting on High Street there is a gate with a path leading therefrom to the front steps of the church. At the northwest corner of the lot on High Street are double gates opening on a driveway leading back therefrom along the north side of the lot to said building. In front of the church on each side of said path the lot is kept for grass and flowers. At a point near the northwest corner of the church

a stone post about four feet high is set in the ground. The parish priest in charge of the church and school had before December 1, 1912, instructed the children not to play to the west of an imaginary line parallel with High Street, passing through this post in front of the building across said lot from north to south; in other words, the children were directed to play in that portion of the lot to the east of said line and not to play in front of the church. The ordinary mode of access to the school from High Street by the pupils was by way of the double gates in the northwest corner of the lot and said driveway. They occasionally came in and went out by the path leading to the front of the church, and apparently they were authoritatively permitted to use either the driveway or the path for that purpose. The southwest corner of said licensed building is about five feet east from High Street, and about three feet north from Cross Street. Measuring from a point on the east side of High Street opposite said southwest corner, along said High Street to the northwest corner of said church lot, the distance is 154 feet, and the prolongation of this line southerly along High Street for 200 feet from the starting point extends across the entrance to the path leading to the middle of the church; but a line drawn from said point of beginning along High Street to said northwest corner of the church lot, then turning east and extending along and across said driveway to said stone post measures 240 feet.

Upon this state of facts the respondents claim that the school premises are limited to that portion of the church property lying to the east of said imaginary line and that therefore said school premises are more than 200 feet from said licensed building, while the petitioner insists that the portions of the lot customarily used in accordance with the directions of the parish priest by the children attending said school, in passing to and from High Street and the school building are part of the school premises.

In *Greenough* v. *Town Council of Warwick*, 31 R. I., on page 561, the court said: "The premises of a public or parochial school can be neither more nor less than the duly constituted authorities, having jurisdiction in the matter, may see fit to appropriate for that purpose;" and also, that what constitutes such premises "is a matter susceptible of proof." The term "premises," as it refers to real estate, is usually held to include appurtenances. As applied to a school, it will properly include in addition to the room or building, where the school holds its sessions, as appurtenant thereto, such portion, if any, of the land whereon it stands as may be apportioned or designated, by proper authority for the use of the school whether in common with others lawfully using said land or otherwise.

Upon the evidence in this case, we are of the opinion that the constituted authority of St. Joseph's Church had appropriated the basement of the building on said lot as the place of study and recitation for said parochial school; that portion of the lot east of said imaginary line not covered by said building as the playground, and the driveway and the path as the portions of said lot to be used by the scholars of said school in attending thereon, and that said basement, schoolyard, driveway and path are part, at least of the premises of said parochial school. The defendants, however, urge that said driveway is a "public travelled way" within the meaning of said Section 2, because said way is shown to be used by other persons having business on the premises, for example, by men bringing coal or taking away ashes. To call such a way "public" would in our judgment be a forced and unnatural construction of the term, is not warranted upon the evidence and is not adopted. The fact that High street is a "public travelled way" is not questioned. It follows, therefore, that the licensed building in question is "within two hundred feet, measured by a public travelled way of the premises" of said parochial school.

(3)   The respondents raise one other point in defence. There is in evidence the bond of William E. Ryan, with sureties, to the Treasurer of Central Falls, dated April 8, 1908, which recites that pursuant to Chapter 101 a license on the day last named had been granted to said Ryan to keep a tavern or hotel in the house numbered 401, 407, on High street, in said city, which license was to be in force, unless sooner revoked, until the first Wednesday in April, 1909, and the respondents claim as a result of the granting of such tavern license that said building and place falls within the exception contained in said Section 2, namely, "except taverns that were licensed on the twenty-second day of May, nineteen hundred eight," so that the prohibition as to licensing a place within 200 feet from the school does not apply to it. This claim, however, is not well founded. And even admitting that the recitals in said bond may afford presumptive evidence that said building was on May 22, 1908, used as a tavern (although an actual use for a particular purpose is not shown by authority to so use) there is no evidence whatever, that after April, 1909, there was any license to keep a tavern in said building or that a

(4) tavern was kept there.   Said Sec. 2 of Chap. 123 itself declares that the word "tavern" as used in said chapter "shall be construed to mean houses where the principal business is the furnishing of food and sleeping accommoda-

(5) tions." Such houses only are recognized as being taverns by this statute and they only are included in the exception. They must be taverns in this sense in order that they may come within the provisions of said exception. It is not enough that they were taverns on May 22, 1908, although that is required.   Manifestly it is not sufficient that they simply hold a tavern license when such liquor license is granted.   But they must be real taverns in fact in the sense in which that word is defined in Chapter 123 on each occasion when a liquor license is granted to them in order to make the exception applicable to them.   The respondents apparently attempt to construe the exception as if it read

"except a building or place licensed as a tavern on the 22nd day of May, 1908," which construction, as already indicated, we cannot accept.

As the building in question was not a tavern in December, 1912, or at any time thereafter, it follows that the liquor license to said William E. Ryan and the transfers as aforesaid were granted without lawful authority and are invalid.

The petition therefore is granted and the writ of certiorari is ordered to issue as prayed for.

*James A. Williams*, for petitioner.

*John N. Butman, Edward D. Bassett*, for respondents.