PIER HOUSE INN, INC.

v.

421 CORPORATION, INC.

No. 2001–33–APPEAL.

Supreme Court of Rhode Island.

Dec. 18, 2002.

---

David L. Krech, Lauren Jones, Providence, for Plaintiff.

Marc DeSisto, Providence, for Defendant.

Present LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

Can the Superior Court remand an arbitration award to the arbitrator for clarification? We answer in the affirmative. A Superior Court justice properly vacated an arbitrator's punitive damages award and remanded the award to the arbitrator. We affirm the Superior Court's confirmation of the clarified arbitration award.

### Preliminary Facts

The dispute between the parties began in May 1993, when Pier House Inn, Inc. (Pier House or plaintiff) leased facilities in Narragansett, Rhode Island, to 421 Corporation, Inc. (421 Corp. or defendant) "to be used exclusively as a first-class restaurant." The parties' business relationship soon soured, and in February 1994, plaintiff filed an action for eviction and non-payment of rent in District Court. Upon defendant's motion, the District Court submitted the case to arbitration pursuant to the terms of the lease. On December 20, 1994, the arbitrator issued an award, granting Pier House possession of the premises and also awarding $10,264 on its claim for rent, $10,634.93 on its claim for utility bills, and $41,030.18 on its claim for attorney's fees. On 421 Corp.'s counterclaim for breach of contract, the arbitrator granted judgment for defendant in the amount of "$4,072.25 as compensatory damages" and "$150,000 as punitive damages."

The award termed "punitive damages" constitutes the core of the dispute between the parties. On April 5, 1995, a Superior Court hearing justice confirmed, upon defendant's motion, all parts of the award except the punitive damages, vacated the punitive damages award, and directed that "the matter [of punitive damages] be re-

heard by the arbitrator."[1] No further action was taken for two years until plaintiff filed a petition for issuance of a writ of certiorari that was denied by this Court on March 5, 1999. The defendant then sought the rehearing ordered by the hearing justice. On July 14, 2000, the arbitrator issued a clarified award, stating, "The award of punitive damages was in fact intended to compensate [defendant] for actual damages it sustained because of wrongful acts of Pier House Inn, Inc., related to the lease." The defendant moved to confirm the award as clarified. After a hearing before a different justice of the Superior Court, the award was confirmed on October 26, 2000, and plaintiff filed this timely appeal. Additional facts will be presented in discussing the issues on appeal.

### Vacating the Punitive Damages Award

We first examine whether the April 5, 1995 hearing justice properly vacated the arbitrator's award of punitive damages. This Court has recognized that the judiciary's role in the arbitration process is "extremely limited." *Purvis Systems, Inc. v. American Systems Corp.*, 788 A.2d 1112, 1114–15 (R.I.2002). By statute, General Laws 1956 § 10–3–12 directs that "the court must make an order vacating the award upon the application of any party to the arbitration:

"(1) Where the award was procured by corruption, fraud or undue means.

"(2) Where there was evident partiality or corruption on the part of the arbitrators, or either of them.

"(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause

shown, or in hearing legally immaterial evidence, or refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been substantially prejudiced.

"(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

In addition to the above statutory grounds, an arbitration award may be overturned when the award is irrational or if the arbitrator "manifestly disregarded the law," *Prudential Property & Casualty Insurance Co. v. Flynn*, 687 A.2d 440, 442 (R.I.1996), such as when an arbitrator understands and correctly states the law, but ignores it in reaching a decision. *Westminster Construction Corp. v. PPG Industries, Inc.*, 119 R.I. 205, 211, 376 A.2d 708, 711 (1977). Mere error of law or the failure to understand or apply the law, however, does not constitute manifest disregard. *Id.*

The record does not indicate upon which of the statutory grounds the April 5, 1995 hearing justice relied in vacating the award. The justice began his analysis of the punitive damages award by rejecting defendant's argument that punitive damages were authorized by the American Arbitration Association (AAA) arbitration rules. He specifically pointed out that "people who are entering into agreements subject to arbitration in commercial contracts would be stunned to learn that they are thereby exposed to punitive damages in situations in which the law of the jurisdiction forbids punitive damages," an observation with which we generally agree.

---

**1.** This Court denied and dismissed as interlocutory plaintiff's appeal of the April 5, 1995 decision and pointed out that the proper method for seeking review of an interlocutory order is by a petition for writ of certiorari. *Pier House Inn, Inc. v. 421 Corp., Inc.*, 689 A.2d 1069, 1070 (R.I.1997) (mem.).

The hearing justice next correctly summarized the grounds for vacating an award, as set forth in § 10–3–12 and by this Court. He then vacated the punitive damages award and ruled that, in the absence of an agreement by the parties, an arbitrator may not award punitive damages that are not authorized by Rhode Island law. He did not state whether he found the award of punitive damages to have been a manifest disregard of the law or simply a mistake in nomenclature, and he declined to take evidence on whether the arbitrator meant the award to be compensatory. Although the hearing justice did not specify the authority on which he relied to vacate the punitive damages award, he did find that § 10–3–13 authorized him to direct the arbitrator to rehear and clarify the vacated punitive damages award. The arbitrator did not hold a rehearing, but instead accepted memoranda from the parties and issued a "Clarification of Award of Arbitrator" on July 14, 2000.

After the clarified award was issued, defendant again filed a motion to confirm the award. At the October 26, 2000 hearing on the motion, Pier House conceded that the § 10–3–12 grounds for vacating the disputed award could not be met, but it argued on appeal that the hearing justice was nevertheless correct in vacating the punitive damages award. Having examined the record, we agree that the April 5, 1995 hearing justice was correct in vacating the punitive damages award, given the arbitrator's manifest disregard of the law in awarding punitive damages, but we disagree that his authority to do so obtains from § 10–3–13.

■ We have pointed out that the judiciary's " 'review [of] the merits of an arbitration award is extremely limited,' " *Town of North Providence v. Local 2334 International Association of Fire Fighters, AFL–CIO*, 763 A.2d 604, 605 (R.I.2000)

(per curiam), and that an arbitration award can be vacated only if the award falls within one of the statutory criteria set out in § 10–3–12, or if the award is irrational, or if the arbitrator has manifestly disregarded the law. *Bradford Dyeing Association, Inc. v. J. Stog Tech GmbH*, 765 A.2d 1226, 1232 (R.I.2001); *Aetna Casualty & Surety Co. v. Grabbert*, 590 A.2d 88, 92 (R.I.1991). Neither an arbitrator's mistake of law nor an error of law is a ground for vacating an arbitration award. *Bradford Dyeing Association*, 765 A.2d at 1232; *Westminster Construction Corp.*, 119 R.I. at 210, 376 A.2d at 711.

■ With respect to whether the arbitrator's award manifestly disregarded the law, we have recognized "that punitive damages are severely restricted under Rhode Island law." *Mark v. Congregation Mishkon Tefiloh*, 745 A.2d 777, 779 (R.I. 2000). Such damages are appropriate only when a defendant's conduct requires deterrence and punishment over and above that provided in an award of compensatory damages, such as when a defendant "act[s] with malice or in bad faith." *Palmisano v. Toth*, 624 A.2d 314, 318 (R.I.1993). For example, in *Peckham v. Hirschfeld*, 570 A.2d 663, 669 (R.I.1990), we held that punitive damages were appropriate in a slander of title action, when the defendant maliciously interfered with the plaintiff's ownership of real estate by knowingly filing an invalid purchase agreement in order to cloud the plaintiff's title and thereby prevent him from selling the property to a third party.

Although we cannot ascertain whether the arbitrator considered, then disregarded, the high bar that must be met before awarding punitive damages, his ready disavowal of that award upon remand is probative of his oversight in labeling the award punitive damages. The arbitrator's clarification is reasonable in light of the fact that

the common law established by this Court requires a party seeking punitive damages to demonstrate the validity of the claim by producing evidence of "such maliciousness, wantonness or willfulness, 'on the part of the party at fault, as amounted to criminality, which for the good of society and warning to the individual, ought to be punished.'" *Id.* (quoting *Sherman v. McDermott,* 114 R.I. 107, 109, 329 A.2d 195, 196 (1974)). The defendant has not met this burden, given 421 Corp.'s failure to present any willful, wicked, reckless, or malicious acts by plaintiff that would serve as grounds for a punitive damages award.

■ Furthermore, although plaintiff characterized the arbitrator's authority as the power to "do whatever he can to supply equity to the parties," the relevant portion of Rule 45(a) of the American Arbitration Association's Rules entitled "Scope of Award" provides: "The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and *within the scope of the agreement of the parties,* including, but not limited to, specific performance of a contract." (Emphasis added.) In this case, the parties did not agree to the imposition of punitive damages. Moreover, the lease specifically provided that it be "construed under the laws of the State of Rhode Island and the Town of Narragansett * * *." Therefore, absent legal authority or the parties' agreement, punitive damages could not be awarded in this case.

### Hearing Justice's Authority to Remand the Award for Clarification

Having concluded that the hearing justice properly vacated the punitive damages award, we address the second issue pre-sented on appeal, namely, whether the justice had the authority to remand the award for clarification. The hearing justice relied on § 10–3–13 to remand the punitive damages portion of the award and directed that "the matter be reheard by the arbitrator to determine whether that award was in whole or in part intended to be compensatory * * *." Notwithstanding the hearing justice's direction that the arbitrator rehear that part of the award, the arbitrator neither conducted a rehearing, or reconvened the parties, or accepted new evidence. Instead, the arbitrator accepted the parties' memoranda, then issued a clarified award.

■ This Court reviews *de novo* questions of statutory interpretation. *Carnevale v. Dupee,* 783 A.2d 404, 408 (R.I.2001). When a statute is clear and unambiguous, we adopt its plain and ordinary meaning. *In re Bernard H.,* 557 A.2d 864, 866 (R.I. 1989). We presume that the Legislature intended every word, sentence, or provision to serve some purpose and have some force and effect, *id.,* but we will not interpret a statute in a manner that would defeat the underlying purpose of the enactment. *Dias v. Cinquegrana,* 727 A.2d 198, 199–200 (R.I.1999) (per curiam). When a statute is ambiguous, we ground our interpretation in policy considerations. *Id.* at 200.

■ Section 10–3–13 provides: "Where an award is *vacated, and the time within which the agreement required the award to be made has not expired,* the court may, in its discretion, direct a rehearing by the arbitrators." (Emphasis added.) Here, the parties' lease provided that the AAA rules for expedited procedures would govern any disputes.[2] Rule

---

**2.** The lease's arbitration clause in its entirety provided that:

"ARBITRATION: Any and all disputes of any nature whatsoever arising hereunder and/or in connection with the interpretation

57 of the American Arbitration Association's Rules requires that, in an expedited arbitration, "the award shall be rendered not later than fourteen days from the date of the closing of the hearing." Thus, plaintiff reasoned, the Superior Court could have remanded the award for rehearing only during the fourteen days following the arbitration hearing, given that a fourteen-day period was the "time within which the [arbitration] agreement required the award to be made." Section 10–3–13. In this case, the record did not indicate the date on which the hearing ended. Assuming the hearing ended no later than the date of the award, i.e., on December 20, 1994, plaintiff argued that the fourteen-day window for remand expired not later than January 3, 1995, well before the April 5, 1995 confirmation hearing in the Superior Court.

We decline to adopt this interpretation of the statute. Section 10–3–13 clearly intends to provide for remand of arbitration awards to arbitrators at the discretion of the hearing justice. Limiting a remand to the time constraints advocated by plaintiff would render the statute a nullity if, for example, an arbitrator forecloses a Superior Court remand for rehearing by rendering a decision on the last day permitted by statute, rule, or agreement.

██ Nevertheless, although we reject the hearing justice's reliance on § 10–3–13 in remanding the case to the arbitrator, we affirm the remand for clarification on other grounds. *Levine v. Bess Eaton Donut Flour Co.*, 705 A.2d 980, 984 (R.I.1998) (per curiam). In the case at bar, the hearing justice observed what he perceived to be an obvious error on the face of the award; awarding punitive damages to defendant was irreconcilable with the arbi-

trator's finding that defendant breached the lease and with the award of attorney's fees to plaintiff. It is our opinion that this blatant discrepancy clearly exemplifies the type of award that § 10–3–14 authorizes a judge to modify or correct, in the interest of effectuating the intent of the award and promoting justice between the parties. Using the unambiguous words, "the court must make an order modifying or correcting the award," § 10–3–14(a) mandates a modification or correction upon the application of any party to the arbitration:

"(1) Where there was an evident material miscalculation of figures, or an evident material mistake in the description of any person, thing, or property referred to in the award.

"(2) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted.

"(3) Where the award is imperfect in matter of form not affecting the merits of the controversy."

Here, given the conspicuous incongruity of the award, we conclude that the arbitrator made an "evident material mistake." It is likely that if the arbitrator had awarded $154,072.50 compensatory damages and $150,000 punitive damages, the hearing justice would not have directed a rehearing on the vacated award of punitive damages, because that amount of compensatory damages in this case would have negated any speculation that the $150,000 punitive damages award actually was intended as compensatory damages.

The justice in this case did not modify or correct the award pursuant to § 10–3–14(b), but instead remanded the award to

---

and/or meaning and/or intent of the parties to this Lease shall be decided by 'expedited arbitration' conducted in accordance with

the rules and procedures of the American Arbitration Association."

the arbitrator to clarify whether the $150,000 award was meant to be compensatory. In so deciding, the hearing justice declined to accept evidence "as to what the arbitrator considered or what he decided." Although § 10–3–14 requires the reviewing court to modify the award as necessary and does not expressly limit the hearing justice's scope of review, under the circumstances of this case, the remand to the arbitrator was appropriate, given the insufficient evidence before the April 5, 1995 hearing justice regarding the rationale for the punitive damages award. There was neither a transcript of the arbitration proceeding, nor was an explanation of the arbitrator's reasoning available for the justice's examination. *See Purvis Systems, Inc.*, 788 A.2d at 1118, and *Westminster Construction Corp.*, 119 R.I. at 209–10, 376 A.2d at 710 (holding that explanations of arbitration awards are not required). The April 5, 1995 hearing justice had before him only the representations of counsel that 421 Corp. had presented evidence demonstrating a loss of $150,000 for capital improvements. The justice had no evidence on which to assess defendant's assertion that plaintiff was liable for these expenditures on the basis of its alleged promise to defendant, as an inducement for entering into the lease, that it would maintain the premises and repair the equipment. Rather than rely on defendant's representations to modify the punitive damages award, the court properly sought a clarification from the arbitrator.

This Court previously affirmed a remand for clarification in *Lemoine v. Department of Mental Health, Retardation and Hospitals*, 113 R.I. 285, 320 A.2d 611 (1974), for the purpose of taking further evidence pursuant to the Administrative Procedures Act.[3] In that case, we held that the remand was part of the reviewing court's "inherent power * * * to correct deficiencies in the record and thus afford the litigants a meaningful review." *Id.*, at 290, 320 A.2d at 614. The April 5, 1995 hearing justice's decision here comports with the statutory mandate that the reviewing justice effectuate the intent of the award and "promote justice between the parties." Section 10–3–14(b). But because of the minimal record, a remand was necessary to ascertain the arbitrator's intent. In the clarified award, the arbitrator made clear that he intended to compensate 421 Corp. for its costs. Simply vacating the arbitrator's award of punitive damages would have thwarted that intent. Moreover, justice would not be served by permitting plaintiff to avoid paying compensation to defendant because of the arbitrator's error in designating the award.

Notwithstanding our holding in this case, we continue to recognize that parties use arbitration as an expeditious and informal means of resolving their disputes by limiting judicial involvement in arbitration. *Purvis Systems, Inc.*, 788 A.2d at 1118. Here, however, the parties' dilatory manner belied their expressed intent to pursue an expeditious arbitration of their grievances. Following the order of remand for rehearing, years passed before defendant sought a clarification of the arbitrator's punitive damages award. The plaintiff also failed to seek either the required rehearing or a timely review of the remand order and thus was responsible for significant delays.

It is our opinion that to ensure that a rehearing before an arbitrator pro-

---

3. The Administrative Procedures Act, G.L. 1956 § 42–35–15(g), provided in relevant part that: "The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced * * *."

ceeds within a reasonable period, a hearing justice ordering such a remand hearing should set a reasonable time within which the parties must seek the rehearing. In this case, such a limitation would have reduced the eight-year resolution of this case to a time frame that better might have served the parties' original intent to resolve their disputes on an expedited basis.

## Conclusion

We concur with the October 26, 2000 hearing justice who had "absolutely no problem in confirming this award." In summary, therefore, we affirm the vacating of an arbitrator's award of punitive damages, the order directing the arbitrator to clarify the "punitive damages" award, and the confirmation of the clarified award. In so doing, we deny and dismiss the plaintiff's appeal and affirm the judgment of the Superior Court, to which we remand the papers of this case.

Chief Justice WILLIAMS did not participate.

FLANDERS, Justice, concurring.

I concur in the result in this case, but for different reasons than those expressed by the majority. Under G.L.1956 § 10–3–14(a), the Superior Court, upon the application of any party to the arbitration, is empowered to modify or correct an arbitration award in any of the following cases:

"(1) Where there was an evident material miscalculation of figures, or an evident material mistake in the description of any person, thing, or property referred to in the award.

"(2) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted.

"(3) Where the award is imperfect in matter of form not affecting the merits of the controversy."

If the court finds that any one or more of the above-listed circumstances exists, then it "must modify and correct the award, so as to effect the intent thereof and promote justice between the parties." Section 10–3–14(b).

Here, one of the parties to the arbitration alleged that the arbitrator mistakenly designated a portion of the damages award as punitive rather than as compensatory. If it were so, then the award would be "imperfect in matter of form not affecting the merits of the controversy," requiring the court, under § 10–3–14 to "modify and correct the award." Also, if the only dispute submitted to the arbitrators was merely one having to do with an alleged breach of the lease agreement, then it was possible that the arbitrator, in awarding punitive damages, "awarded upon a matter not submitted to [the arbitrator]." This also would require modification and correction of the award "to effect the intent thereof and to promote justice between the parties." Section 10–3–14(b).

The question raised but unanswered by the text of § 10–3–14 is how should the Superior Court ascertain whether "the award is imperfect in matter of form not affecting the merits of the controversy," or whether "the arbitrators have awarded upon a matter not submitted to them"? In other words, how is the Superior Court to determine whether, as alleged, the arbitrator's designation in the award of a portion of the damages as "punitive" was a mistake? In cases such as this one, the court may have to go beyond the face of the award to answer these questions. In my judgment, one of the most efficient and direct ways to get to the bottom of such allegations is to remand the proceeding to the arbitrator with a request to clarify the

award or that portion of it that has been questioned or challenged as mistaken. I agree with the majority that providing a time limit for the arbitrator to respond is doubtless the most prudent course to follow.

To be sure, "a general rule in common law arbitration [is] that when arbitrators have executed their award and declared their decision they are *functus officio* and have no power or authority to proceed further." *Mercury Oil Refining Co. v. Oil Workers International Union,* 187 F.2d 980, 983 (10th Cir.1951). (Emphasis added.) But this "common law doctrine of *'functus officio'* has been modified by statute in some states to permit the arbitrator to modify or correct the award, to the limited extent stated in the statute, upon submission by a court or upon direct application to the arbitrator by one of the parties." Elkouri & Elkouri, *How Arbitration Works* 313, 388 (5th ed.1997). (Emphasis added.) Given the mandate of §§ 10–3–13 and 10–3–14 for courts to correct and to modify arbitration awards in certain circumstances, and to vacate them and remand the case to the arbitrator(s) for a rehearing in others, I believe that the common-law doctrine of *functus officio* has been modified in this jurisdiction to the extent necessary for courts to fulfill their duties under these statutes.

Thus, I would hold that § 10–3–14, together with § 10–3–13 (authorizing the court, "in its discretion, [to] direct a rehearing by the arbitrators" after vacating an award, if the time to make the award under the agreement has not yet expired),

have modified the common-law doctrine of *functus officio* by allowing rehearings, modifications, and corrections of awards in the situations specified "so as to effect the intent thereof and promote justice between the parties." Section 10–3–14(b). *Cf. Locals 2222, 2320–2327, International Brotherhood of Electrical Workers AFL–CIO v. New England Telephone and Telegraph Co.,* 628 F.2d 644 (1st Cir.1980) (citing numerous cases recognizing the power of courts to resubmit awards to the original arbitrators for interpretation or amplification).

Accordingly, for the purpose of resolving this case, I would assume, without deciding, that arbitrators have the power to issue punitive-damage awards in situations in which, for example, the scope of the arbitration agreement is broad enough to include within its ambit disputes that involve intentional tort claims (such as fraud, conversion, or intentional interference with contract). *See, e.g., Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 61–62 n. 7, 115 S.Ct. 1212, 1218 n. 7, 131 L.Ed.2d 76, 87 n. 7 (1995) (if contracting parties agree to include punitive damage claims within the issues to be arbitrated, then the Federal Arbitration Act ensures that their agreement will be enforced even if state law otherwise would exclude such claims from arbitration); *see also Raytheon Co. v. Automated Business Systems, Inc.,* 882 F.2d 6, 10 (1st Cir.1989) (interpreting "all disputes" and "any remedy or relief" phrases in an arbitration agreement to allow arbitrators to award punitive damages).[4] In such circum-

---

**4.** Punitive damages "serve as an effective deterrent to malicious or fraudulent conduct." *Raytheon Co. v. Automated Business Systems, Inc.,* 882 F.2d 6, 12 (1st Cir.1989). In a situation in which such conduct could give rise to punitive damages if proven to a court, there does not appear to be any compelling reason to prohibit a party that proves fraudu-

lent conduct to an arbitrator from recovering punitive damages, unless the scope of an arbitration agreement is limited to breach-of-contract disputes. *Id.* An arbitration agreement, therefore, can be construed to authorize the arbitrator to award punitive damages in the same circumstances in which a court could do so, unless an agreement to arbitrate explic-

stances, an arbitration agreement that is not limited to breach-of-contract disputes may allow the arbitrator to award such damages because they would be available as a matter of law if such claims were litigated in a judicial tribunal. On the other hand, if the parties simply agreed to arbitrate a contractual dispute, then the arbitrators might well exceed their powers by awarding punitive damages because such relief is not generally available as a remedy for a breach of contract.

But here, however, we have no need to decide these issues because, even if punitive damages could be awarded under this arbitration agreement, the question presented is whether the court had the power to obtain a clarification from the arbitrator about whether, as alleged, the apparent award of punitive damages was a mistake because of a mislabeling or misidentification of this damages component by the arbitrator.

Although, in this case, the Superior Court did not actually proceed under § 10–3–14, it could have done so and reached the same result. Thus, even if the court erred both in vacating the award under § 10–3–12 (because the grounds specified therein for doing so did not exist in this case) and in remanding the case for a rehearing under § 10–3–13 (because "the time within which the agreement required the award to be made" had expired in this case, and, therefore, the court lacked the ability to direct a rehearing by the arbitrators under § 10–3–13), such errors were harmless because the court nevertheless had the power to seek a clarification of the award under § 10–3–14 without any need for a rehearing and, thus, without regard to the expiration of any applicable period for obtaining a rehearing. Moreover, this Court can affirm a Superior Court judgment for different reasons than those relied upon by the trial justice. *Levine v. Bess Eaton Donut Flour Co.,* 705 A.2d 980, 984 (R.I.1998) (holding that the Supreme Court can affirm a trial justice's decision on grounds other than those stated by the trial justice); *see also Liberty Mutual Insurance Co. v. Tavarez,* 797 A.2d 480, 486 n. 5 (R.I.2002); *Borsay v. State of Rhode Island,* 714 A.2d 1201, 1202 (R.I.1998).

For these reasons, I would affirm the judgment confirming the award as modified on the grounds that, under § 10–3–14, the court had the power to ascertain whether, as alleged, the award of punitive damages was a mistake, and it could do so by asking the arbitrator to clarify the award in this respect. In effect, that is what happened here. Even though the court vacated the award and remanded it for a rehearing, no such rehearing occurred and the arbitrator merely clarified for the court and the parties that he intended the punitive portion of the damages award to be compensatory. In these circumstances, the Superior Court "must modify and correct the award so as to effect the intent thereof and promote justice between the parties." Section 10–3–14(b). Because the Superior Court accomplished this same objective (albeit by a different route), I would affirm the judgment that confirmed the award as modified to reflect the arbitrator's true intention.

itly excludes such damages from its arbitra-   tion provisions. *Id.*