DECISION
Aldo's Place, Inc. d/b/a Water Street Café (hereinafter "Appellant," "Applicant," or "Café") appeals to this Court from a decision of the Department of Business Regulation (hereinafter "DBR"). In its ruling, DBR upheld a decision of the Town of New Shoreham (hereinafter "Town"), denying Appellant's application for a Class C liquor license pursuant to G.L. 1956 § 3-7-19.[1] Chapter 35 of title 42 of the Rhode Island General Laws confers jurisdiction on this Court. For the reasons set forth below, the Court remands this case to DBR for additional proceedings consistent with this Decision.
 I Facts and Travel
On September 1, 2006, Appellant applied to the New Shoreham Board of License Commissioners for a Class C liquor license. (Application for License, September 1, 2006.) The Applicant proposed to operate a liquor serving establishment in an individual unit within a multi-unit retail shopping center, the Inn at Old Harbor, which is on Block Island at Plat 6, Lot 155. The subject rental unit had been used by Ben Jerry's to operate its ice cream business. *Page 2 
(Appendix to Application for License, p. 6.) The Applicant seeks to serve food and beverages on site, as well as to operate a "take out" business from the subject unit. (Exhibit 5, 6/1/07 DBR Hearing.) The Applicant also proposes to provide wait service on an awning covered outside deck overlooking Old Harbor (Appendix to Application for License, pp. 5-6.)
On November 20, 2006, a representative of the First Baptist Church (hereinafter "Church") filed a notice of objection with the Town. (Letter from First Baptist Church to Deputy Town Clerk, November 20, 2006.) The Church based its opposition on the contention that the "establishment is located within 200 feet of the church boundary."Id.
On November 29, 2006, the Board of License Commissioners rejected Appellant's application. (Letter from Deputy Town Clerk to Stephen E. Papa, December 1, 2006.) In denying the application, it relied on § 3-7-19 and found that the "premise is within 200 feet of Old Harbor Baptist Church." Id.
The Appellant took a timely appeal to DBR from this adverse ruling. In accordance with § 3-7-21, DBR conducted a de novo hearing on the application on June 1, 2007.[2] See Board of Police Com'rs of City ofWarwick v. Reynolds, 86 R.I. 172, 177, 133 A.2d 737, 740-741 (R.I. 1957) ("Under the existing law the liquor control administrator, who is now vested with the authority formerly exercised by the alcoholic beverage commission, may on the applicant's appeal hear the case de novo and has been termed by this court a super-licensing board."); Hallene v.Smith, 98 R.I. 360, 364, 201 A.2d 921, 924 (1964) ("When § 3-7-21 is read in its *Page 3 
entirety, it discloses by necessary implication a legislative intent to provide licensees with a de novo hearing of the cause rather than an appellate review of the decision.")
The instant parties neither presented any testimony at the subsequent hearing, nor did either submit an agreed statement of facts. However, counsel for the Appellant offered a series of exhibits, including a site plan. (Applicant's Exhibit 2, DBR Hearing, 6/1/07.)
Pertinent to this case, the plan provided measurements from the property line of the Church to both the edifice of the shopping center and to the Applicant's individual unit within the center. The Café unit, including an entrance depicted on the exhibit, is located outside the 200-foot zone. (Applicant's Exhibit 2, DBR Hearing, 6/1/07.) However, the protected zone depicted on the plan encompasses a section of the shopping center structure and the land surrounding it. (Applicant's Exhibit 2, DBR Hearing, 6/1/07.)
A portion of the site plan was reproduced and marked to designate the location of a picnic area with twelve picnic tables located on the shopping center property. It is unclear from the record whether the photocopy depicting the picnic area received a separate exhibit number, but it appears as part of the record and was referred to at the hearing.[3]
Counsel for the Town noted that the parties had agreed that the location of the twelve picnic tables would be shown on the site plan. (Tr. at 6.) The picnic area was further addressed at the hearing. Counsel for the Town, Ms. Merolla, counsel for the Applicant, Mr. St. Pierre, and the hearing officer engaged in the following discussion:
 Ms. Merolla: The twelve picnic tables that have been inserted into the plat and the plan, indicate the tables where patrons of the restaurants in this area take their food.
 The Hearing Officer: So, there's like a generic?
 Ms. Merolla: It's only for this building. *Page 4 
 Mr. St. Pierre: It's not part of the lease premises. It's sort of public. Anybody could walk down Water Street and walk in to these picnic tables and use them.
 Ms. Merolla: No, no, it's limited to patrons of here.
 The Hearing Officer: I do believe I've actually sat there once and had Benn Jerry's Ice Cream, so I have an idea.
 Mr. St. Pierre: Fair enough. (Tr. at 10.)
Assuming that the picnic area was properly marked on the site plan, it may be located within the 200-foot protected zone. However, the record is insufficient for the Court to make a conclusive finding on its exact location.
At the DBR hearing, the parties offered several photographs of the Old Harbor Inn and of the proposed Café. (Applicant's Exhibits 4 (1-9) and Town's Exhibit 1, DBR Hearing, 6/1/07.) A photograph of the shopping center structure notes the "entry door to proposed liquor service area." (Town's Exhibit 1.) The site plan identifies what appears to be either a common entrance to the shopping center located near the Café or an entrance to the Café for the exclusive use of its patrons. (Applicant's Exhibit 2, DBR Hearing, 6/1/07.) This entrance is located outside the protected zone.
In his argument to the hearing officer, counsel for the Applicant stated: "There is no access control over any other part of the building that Aldo's Place, Inc. would have. The front of the building has other businesses and retail. There is no access to those." (Tr., 6/1/07, at 20.) Counsel for the Town did not contest this assertion. However, other than this reference in counsel's oral argument, the record is silent as to whether Café patrons would be able to access the establishment from any other entrance. The Court cannot determine whether the depicted entrance is merely the entrance nearest to the liquor establishment or whether it is the only entrance available to Café patrons to access the facility. *Page 5 
The site plan does not identify a parking lot on the shopping center property, but the record suggests that there may be common area parking for patrons of the shopping center, including patrons of the Café. If so, the record is silent on the location of the parking area.
The Court notes that counsel for the Applicant argued at the DBR hearing that his clients had
 been owners of a liquor license for Aldo's Restaurant on Block Island for nearly 30 years. And as responsible applicants for the liquor license, they know that the consumption of alcoholic beverages must be within the confines of their restaurant and people can't wander out into the parking lot or into the street, consuming liquor or carrying a glass of wine or beer . . . (Emphasis added.) (Tr. at 23.)
Additionally, the record includes a commercial lease between Applicant and the owner of the shopping center. (Applicant's Exhibit 5, DBR Hearing, 6/1/07.) It specifically provides:
 9. Parking. During the term of this lease, Lessee shall have the nonexclusive use in common with Lessor, other tenants of the building, their guests and invitees, of the non reserved common automobile parking areas, driveways, and foot ways, subject to rules and regulations for the use thereof as prescribed from time to time by Lessor. Id.
Finally, photographs offered into evidence at the DBR hearing at least raise the question of whether the shopping center provides off-road parking to patrons of its tenants, including those of the Café. Several of the photographs depict automobiles located in close proximity to the proposed liquor establishment. (Applicant's Exhibits 4 (2, 3 and 7), DBR Hearing, 6/1/07.)
The Café unit, including the entrance depicted on the exhibit, is located outside the 200-foot zone. Id. However, the protected zone depicted on the plan encompasses a section of the shopping center structure and the land surrounding it. (See DBR Ex. B.) The record is silent on the proposed location of the outside deck. *Page 6 
After the hearing concluded, the parties submitted memoranda in support of their respective positions. On August 22, 2007, the hearing officer issued a nine-page recommendation in which she recommended that the Town's denial of the application be upheld. On August 24, 2007, the Director of DBR adopted the written recommendation in its entirety. Accordingly, the hearing officer's written recommendation became DBR's official decision to uphold the Town's denial of the application. A certified copy of the decision was sent to the parties on August 28, 2007. The Appellant filed a timely appeal to this Court.
In its decision, DBR observed that "The parties agreed that the only issue on appeal is how to measure the 200 feet from the Appellant's location to the First Baptist Church ("Church"), a place of worship, located across the street from Appellant." (Decision at 2.) It found that the applicable statute required that the protective zone be measured "from church or school property to the building where the license is to be located." (Decision at 8.) It then construed the word "building" to refer solely to the structure that housed the liquor establishment. It further stated:
 While Appellant is only located in part of the building, there is no distinction within the statute for being a tenant in part of a building. The State has chosen to restrict liquor licenses in such a manner so that buildings that are close to churches or schools do not have liquor licenses within them. (Decision at 8.)
On appeal, Appellant argues that the denial of its Class C liquor license was based on an erroneous application of § 3-7-19's "200-foot rule." The Appellant contends that each retail unit in a larger retail center constitutes a "building" for the purposes of § 3-7-19; as such, Applicant maintains that each retail unit must be analyzed separately to determine whether it is located within 200 feet of a place of public worship. The Appellant argues that even if the Inn at Old *Page 7 
Harbor as a whole is within 200 feet of the Church, the location of the proposed licensed premises falls outside the 200 foot range and thus qualifies for a liquor license.
Although the Town concedes that no portion of Applicant's individual unit is within 200 feet of a place of public worship, it contends that the proposed licensed premises violates the "200-foot rule" of § 3-7-19. The Town argues that the term "building" in § 3-7-19 refers to a retail center as a whole and not to the individual retail units contained therein. The Town asserts that the decision of DBR was correct because a portion of the Inn at Old Harbor is situated within the protected zone irrespective of the location of any individual unit within the shopping center.
 II Standard of Review
When considering an administrative appeal pursuant to G.L. 1956 § 42-35-15, the Court must apply a limited standard of review. Mine SafetyAppliances Co. v. Berry, 620 A.2d 1255, 1259 (R.I. 1993). Such a review is "limited to an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." Johnston Ambulatory Surgical Assoc., Ltd. v. Nolan,755 A.2d 799, 805 (R.I. 2000) (quoting Barrington Sch. Comm. v. Rhode IslandState Labor Relations Bd., 608 A.2d 1126, 1138 (R.I. 1992)). This Court "may not, on questions of fact, substitute its judgment for that of the agency whose action is under review, even in a case in which the court might be inclined to view the evidence differently and draw inferences different from those of the agency." Id. at 805 (quoting Rhode IslandPub. Telecomm. Auth. v. Rhode Island State Labor Relations Bd.,650 A.2d 479, 485 (R.I. 1994) (internal quotations omitted)). *Page 8 
This Court upholds the agency's decision if there is competent evidence in the record to support it. Barrington Sch. Comm.,608 A.2d at 1138. "Legally competent evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." Arnold v.Dep't of Labor and Training, Bd. of Review, 822 A.2d 164, 167 (R.I. 2003) (citing Rhode Island Temps, Inc. v. Dep't of Labor and Training,Bd. of Review, 749 A.2d 1121, 1125 (R.I. 2000)). This Court's limited review, however, is not merely a rubber stamp for agency action and when appropriate, it may
 reverse, modify, or remand the agency's decision if the decision is violative of constitutional or statutory provisions, is in excess of the statutory authority of the agency, is made upon unlawful procedure, is affected by other errors of law, is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record, or is arbitrary or capricious and is therefore characterized by an abuse of discretion. Johnston Ambulatory Surgical Assoc., Ltd., 755 A.2d at 805.
"It is clear that the Superior Court justice has some discretion in fashioning a remedy when hearing an appeal from an agency decision. The court may remand the case to the agency for the presentation of additional evidence." Birchwood Realty, Inc. v. Grant, 627 A.2d 827, 834
(R.I. 1993). Our Supreme Court has "held that the Superior Court's power to order a remand under § 42-35-15 is `merely declaratory of the inherent power of the court to remand, in a proper case, to correct deficiencies in the record and thus afford the litigants a meaningful review.'" Id. (quoting Lemoine v. Dept. of Mental Health, Retardationand Hospitals, 113 R.I. 285, 289, 320 A.2d 611, 614 (1974)). *Page 9 
 III Analysis
The parties to this case, and DBR in its decision, articulate a narrow view of the issue in dispute under § 3-7-19. They suggest that the disputed question is merely whether the zone of protection is measured from the edifice of the shopping center as a whole or whether it is measured from the specific location of the liquor establishment within the center. The Court finds that the parties, as well as DBR, erred in their respective narrow and overly simplistic interpretations of the word "building" under the statute. The term "building" under § 3-7-19
cannot be defined by either the location of the individual unit within the Inn at Old Harbor or by the edifice of the shopping center as a whole.
This Court reviews issues of statutory interpretation de novo.See Henderson v. Henderson, 818 A.2d 669, 673 (R.I. 2003) (citingPier House Inn, Inc. v. 421 Corp., 812 A.2d 799, 804 (R.I. 2002)). When engaging in statutory construction, the Court must "look to the plain and ordinary meaning of the statutory language." Id. Where the language of a statute "is clear on its face, then the plain meaning of the statute must be given effect and this Court should not look elsewhere to discern the legislative intent." Id. (internal quotations omitted). Accordingly, when examining "an unambiguous statute, there is no room for statutory construction and [the Court] must apply the statute as written." State v. DiCicco, 707 A.2d 251, 253 (R.I. 1998) (internal quotations omitted).
However, when statutory provisions are unclear or ambiguous, this Court examines the statute in its entirety. See In re Advisory to theGovernor, 668 A.2d 1246, 1248 (R.I. 1996). With that in mind, it is well recognized that "[t]he construction of legislative enactments is a matter reserved for the courts, . . . and, as final arbiter on questions of construction, it is this *Page 10 
[C]ourt's responsibility in interpreting a legislative enactment to determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes." State v. Greenberg, 951 A.2d 481, 489 (R.I. 2008) (quotingBrennan v. Kirby, 529 A.2d 633, 637 (R.I. 1987)). To accomplish that task, the Court examines "`the language, nature, and object of the statute[,]' to glean the intent of the Legislature." Id. (quotingState v. Pelz, 765 A.2d 824, 829-30 (R.I. 2001)). It also must be remembered, however, that "[t]his Court will not construe a statute to reach an absurd result." State v. Flores, 714 A.2d 581, 583 (R.I. 1998) (quoting Kaya v. Partington, 681 A.2d 256, 261 (R.I. 1996)).
For generations, the legislative scheme in Rhode Island has prohibited the sale of liquor within a specified distance of certain institutions such as houses of worship and schools.[4] Many other jurisdictions have similar statutes or ordinances providing that a liquor business may not be licensed or carried on within a prescribed distance of a place of learning or public worship. Underlying such statutes is "a legislative judgment that the welfare of individuals attending [houses of worship and schools] would be served by . . . a zone of protection." 2 Arlen H. Rathkopf, The Law of Zoning and Planning, § 24:48 (2006). As the Supreme Court of Florida explained in State ex rel. Yung Sing v. Permenter,59 So.2d 773, 774 (Fla. 1952),
 [t]he primary objective [of such legislation] is to remove the atmosphere of an establishment wherein intoxicating beverages are sold a reasonable distance from a church . . . because the milieu of such a place is considered inimical to the best interests and welfare of those who attend church, Sunday or secular school as well as of those who are voluntarily or necessarily ensconced within the other named institutions or grounds.
Similarly, in upholding a prohibition on the sale of alcohol within 500 feet of a "church or school," the United States Court of Appeals for the Fifth Circuit stated: *Page 11 
 Plainly schools and churches have a valid interest in being insulated from certain kinds of commercial establishments, including those dispensing liquor. Zoning laws have long been employed to this end, and there can be little doubt about the power of a state to regulate the environment in the vicinity of schools [and] churches . . . by exercise of reasonable zoning laws. Davidson v. Clinton, 826 F.2d 1430, 1432
(5th Cir. 1987).
As early as 1913, our State Supreme Court determined that the term "premises" as set forth in § 3-7-19 referred to the property line of a protected institution. When measuring the protected zone from the house of worship or school, the measurement begins at its property line, and not from its entrance. In Rice v. Bd. of License Comm'rs of CentralFalls, 36 R.I. 50, 55, 88 A. 885. 887 (1913), the Court ruled that
 As applied to a school, it will properly include, in addition to the room or building where the school holds its sessions, as appurtenant thereto, such portion, if any, of the land whereon it stands as may be apportioned or designated, by proper authority, for the use of the school, whether in common with others lawfully using said land or otherwise.
Although the instant case involves a place of worship rather than a school, it is clear that the same standard would apply. The applicable statute does not distinguish among protected institutions.[5]
In accordance with the Rice case, the protected zone is measured from the property line of the protected "premises" to the "building" of the liquor establishment.[6] The Rice case effectively overruled an 1881 decision holding that distance between the protected institution and *Page 12 
the liquor establishment was to be measured in a straight line "from any part of the building or place to any part of the school." See In re TheLiquor Locations, 13 R.I. 733 (R.I. 1881).[7]
Although the Court in Rice defined the term "premises", it did not define the term "building," the term material to the instant dispute. The Legislature chose different words when describing the location where the measurement from the protected institution (premises) began and the measurement to the liquor establishment ended.[8] In doing so, the General Assembly clearly intended that the terms describing each of the two locations would be construed to have a different meaning. This case solely involves the interpretation of the word "building" as it relates to the measurement of the protected zone from the liquor establishment to the protected institution.
Since deciding the Rice case in 1913, our Supreme Court has issued two opinions construing the term "building," one in 1916 and more recently in 1961. See Rice v. Bd. of Police Com'rs of City of Woonsocket,39 R.I. 22, 97 A. 19 (1916) (Woonsocket)[9] and Newport Motor Inn, Inc. v.McManus, 93 R.I. 93, 171 A.2d 440 (1961). These opinions provide guidance to the Court in determining the issue presented in this case. *Page 13 
In Woonsocket, the petitioner challenged an administrative decision granting an application for a liquor license claiming that the license was issued by the Board in violation of a statute substantially similar to § 3-7-19.[10] See Woonsocket, 39 R.I. at 23, 97 A. at 20. In that case, the liquor establishment was located in the middle of a side-by-side three-unit structure. Id. Although no portion of the licensed premises was located within 200 feet of a protected institution, the petitioner claimed that the liquor licensing prohibition had nonetheless been violated. An attached shed was located only 164 feet from a school by a public way. Id. at 24, 97 A. at 20. The applicant owned and occupied the shed, but it was not used in connection with the liquor business and there was no means of passage between the two units. Id.
The Court in the Woonsocket case concluded that "the structures . . ., although . . . placed against one another, [were] . . . distinct buildings." Rice, 39 R.I. at 22, 97 A. at 21. The Court was satisfied that the structure containing the licensed premises was "clearly not part of the shed[,] [as] [i]t was built at a different time, upon a different plan, and for a different purpose." Id. Furthermore, "[t]here [was] no interior connection or means of passage between the two."Id. The Court in Woonsocket concluded that because no liquor was served in the shed, and because there was no passage between the two units, the protected zone should be measured from the portion of the structure actually used for the sale of liquor to the public way and from there to the protected institution.
The Court later expanded its definition of "building." See NewportMotor Inn, 93 R.I. at 97, 171 A.2d at 443. The petitioner in that case observed that the Legislature chose separate terms, "premises" for the measurement from the protected institution and "building" for the measurement to the liquor establishment. Id. at 95, 171 A.2d at 442. It then asserted that in *Page 14 
doing so, the Legislature expressed the intent to exclude the land outside the walls of the liquor establishment from the zone of protection. Id. The Court disagreed.
The petitioner in the Newport Motor Inn case operated a motel and restaurant in a single structure located across a public highway from a church. Id. at 93-94, 171 A.2d at 441. The edifice housing the business was set back over 500 feet from the public road. Id. at 94-95,171 A.2d at 441-42. However, patrons accessed the motel from a long private driveway leading to the establishment from the edge of the highway.Id. at 95, 171 A.2d at 442. The Court concluded that "the only distance to be measured is the width of the highway which is 66 feet, a distance clearly within the prohibition of the statute." Id. at 97,171 A.2d at 443. The Court held that as it relates to the liquor establishment, the term "building" included not only the building but also the private driveway leading to and from the structure housing liquor business.Id. In so holding, the Court stated:
 [I]n passing [§ 3-7-19] the legislature had in mind the nearness of the respective premises to each other[,] [as] [i]t is at the entrance to church property that parishioners entering or leaving the highway would observe the patrons of a place serving liquor either leaving the highway or entering it after coming from the place of sale. Id.
Although the petitioner's business in the Newport Motor Inn case was not operated out of a multi-unit structure, that factual difference was not pertinent to the Court's ruling in that case. The Court focused on the driveway leading from the highway to the facility, not on the fact that the structure constituted a single business operation. The Court's reasoning in the Newport case would apply equally to a liquor establishment located in an individual unit as part of a multi-unit shopping center.
Other jurisdictions, either under the express terms of a statute or as a result of judicial construction, have placed particular emphasis on the location of the door or entrance of the *Page 15 
establishment seeking a liquor license when fashioning an appropriate zone of protection, as opposed to the driveway leading to the place where liquor was to be sold. See Presbyterian Church of Livingston v.Div. of Alcoholic Beverage Control, 53 N.J. Super. 271, 274,147 A.2d 274, 275 (N.J.Super.Ct. App. Div. 1959) (measuring the statutory distance "in the normal way that a pedestrian would properly walk from the nearest entrance of said church or school to the nearest entrance of the premises sought to be licensed."); State ex rel. First PresbyterianChurch of Miami v. Fuller, 136 Fla. 788, 793, 187 So. 148, 150 (Fla. 1939) (holding that "the distance should be measured from the main front entrance of the church or school to the main front entrance of the place where liquor is sold, following the route of ordinary pedestrian travel."); and State Beverage Dept. v. Brentwood Assembly of GodChurch, 149 So.2d 871, 877 (Fla.App. 1963) (taking measurement "from main front entrance of said church or school to main front entrance of said place of business, along the route of ordinary pedestrian traffic").
It is noteworthy that the Woonsocket case was decided decades earlier than the Newport Motor Inn case, and long before the popularization of automobile travel. The Court in the Woonsocket case could hardly have been expected to contemplate the role of the automobile in modern society let alone the current retail business environment of strip malls and large indoor multi-level shopping centers. Nonetheless, theWoonsocket case remains important because the Court rejected the argument that forms the basis of the administrative decision in this case: that the term "building" refers to the edifice of a multi-unit structure.
The legislative intent of § 3-7-19 is clear. The General Assembly sought to provide a zone of protection to parishioners and school children, shielding them from the exposure to intoxicated individuals entering and exiting the licensed premises. See 2 Arlen H. Rathkopf,The Law of Zoning and Planning, § 24:48 (2006) (discussing liquor licensing prohibitions generally). *Page 16 
It is clear from the Woonsocket and Newport Motor Inn opinions that the focal point for measuring the distance from a place where liquor is sold to a house of worship or school is not the structure that houses a multi-unit retail operation. However, the term "building" in § 3-7-19
includes more than the individual unit where liquor is sold. The relevant measurement from the parcel of real estate on which the liquor establishment is situated must be determined by locating the point on that parcel closest to the protected institution where parishioners or students would come into contact with patrons of the liquor establishment.
In some cases, as in the Newport Motor Inn case, that closest point may be the start of a long driveway. In other cases, such as where liquor establishments are located in a strip mall, the closest point may be the common parking area in front of the retail stores. In still other cases, the closest point may be a picnic area or outside deck where alcohol is purchased or consumed.
In its decision, DBR adopted the argument advanced by the Town and found that the 200-foot protective zone was properly measured from the edifice of the "building" housing the retail shopping center, and not from the entrance to the premises seeking to serve liquor. The Court disagrees with this position. The Court also disagrees with the contention of the Appellant, who suggests that the sole criterion for determining whether the proposed licensed premises and its entrance falls within the 200-foot range is its specific location inside the shopping center in relation to the location of the place of public worship.
It is clear from the Newport Motor Inn case that the term "building" in § 3-7-19 refers not only to the unit that houses the liquor establishment but also to the means of ingress and egress leading to that establishment. It likewise is clear from the Woonsocket case that when applying § 3-7-19, the term "building" does not refer to the edifice of a multi-unit structure. By *Page 17 
equating the term "building" with the shopping center edifice, the DBR decision misconstrues the law and defeats the purpose of the protected zone under § 3-7-19.
The term "building" means more than the enclosed unit that houses the liquor establishment. It also includes the area of the shopping center property where parishioners will be exposed at their place of worship to patrons of Appellant's business as they buy and consume alcohol, as they enter and leave the Café and as they enter and leave the shopping center. In its decision, DBR failed to consider such potentially significant focal points as:
 1. the location of the proposed licensed premises within the shopping center;
 2. the location of any outside areas where liquor may be served and consumed, including the picnic area and proposed deck;
 3. whether Café patrons could gain access to the establishment from any entrance to the shopping center other than the one depicted on the site plan; and
 4. the location of any parking areas or driveways on the shopping center property leading to the applicant's business.
This Court finds that in cases involving applicants occupying identifiable units within a multi-unit structure (i.e. a retail shopping center), the term "building" as set forth in § 3-7-19 does not refer to the edifice of the multi-unit structure that houses the unit seeking a liquor license. Rather, the Court concludes that it refers to the location of the unit within the structure, which location shall include not only the interior of the unit, but also any outdoor area used in connection with the establishment for the sale or consumption of alcohol. The term also includes any parking areas on the shopping center property available to the applicant's patrons and any *Page 18 
driveways providing access to the establishment from the public highway. It further includes any entrances to the shopping center, as well as any common areas within the shopping center which provide access to the liquor establishment.
The record in this case is insufficient on the location of the proposed deck and the existing picnic area in relation to the protected zone. It likewise is unclear as it relates to the nature and extent of the use of the picnic area by the Applicant's patrons, and whether "take out" customers will be able to utilize that area to consume alcohol. The record also is insufficient as to whether the unit can be accessed from any entrance within the protected zone. In addition, the record fails to address adequately whether or not the shopping center offers off-public road parking, and if so, the location of the spaces and the driveway leading to those spaces.
Such deficiencies in the record preclude this Court from reviewing DBR's administrative decision to uphold the Town's denial of Appellant's application for a Class C liquor license on the grounds that to do so would violate the 200-foot rule of § 3-7-19. Accordingly, the Court remands this case to DBR to conduct, in accordance with § 3-5-17, whatever additional evidentiary hearing is necessary to enable it to render a decision consistent with this Decision. This Court will retain jurisdiction of this case.
Counsel shall submit an appropriate order for entry.
[1] Section 3-7-19 reads, in pertinent part: "Retailers' . . . Class C . . . licenses . . . shall not be issued to authorize the sale of beverages in any building within two hundred feet (200') of the premises of any . . . place of public worship."
[2] Section 3-7-21 (a), entitled "Appeals from the local boards to director," provides in pertinent part:
 Upon the application of any petitioner for a license . . . the director has the right to review the decision of any local board, and after hearing, to confirm or reverse the decision of the local board in whole or in part, and to make any decision or order he or she considers proper. . . .
[3] To avoid confusion, the Court will refer to this document as Exhibit 2(a)
[4] The precursors to § 3-7-19 include Pub. Laws R.I. chapter 889, section 2, of April 29, 1881; section 2, chapter 123 of the General Laws of 1909; and section 7, chapter 163 of the General Laws of 1938.
[5] The protected institutions consist of "public, private, or parochial school[s] or . . . place[s] of public worship." Section 3-7-19.
[6] As already noted in n. 1 supra, Section 3-7-19 provides in pertinent part: "Retailers' . . . Class C . . . licenses . . . shall not be issued to authorize the sale of beverages in any building within two hundred feet (200') of the premises of any . . . place of public worship." (Emphasis added.)
[7] The Liquor Locations Court clearly did not contemplate a situation, such as that in the present case, in which one or more separate "buildings" is sheltered under the roof of a single structure.See Rhode Island State Building Code § 202.0 (1998) (stating that for application of code, each portion of building which is completely separated from other portions by fire walls shall be considered a separate building). Indeed, a retail shopping center such as the Inn at Old Harbor would have been completely alien to the inhabitants of Block Island during the late nineteenth century, as "[s]ummer colony development on Block Island, like that of most spots along the New England coast, follow[ed] a generally sequential pattern of boarding houses, hotels, and private summer cottages." The Rhode Island Historical Preservation Commission, Historic and Architectural Resourcesof Block Island, Rhode Island (1991). The stores that existed on the island were located in "[t]he loosely organized town center on the south side of the Great Salt Pond," an area that was quickly abandoned in favor of a new commercial district around Government Harbor in the 1870s and 1880s. Id.
[8] It is axiomatic that "in the absence of statutory definition or qualification the words of a statute are given their ordinary meaning."Chambers v. Ormiston, 935 A.2d 956, 961 (R.I. 2007) (construing the ordinary meaning of the word "marriage"). In doing so, however, it "is crucial to determine the ordinary meaning as of the time ofenactment." Id. (Emphasis in the original.) The reason for this is that "[w]ords can have different meanings at different points of historical time, but it is the role of the judiciary to ascertain what meaning a particular word had when the statute containing that word was enacted."Id.
[9] To avoid confusion, the Court will refer to Rice v. Bd. of LicenseComm'rs of Central Falls, 36 R.I. 50, 55, 88 A. 885, 887 (1913) asRice, and it will refer to Rice v. Bd. of Police Com'rs of City ofWoonsocket, 39 R.I. 22, 97 A. 19, 97 A. 19 (1916) asWoonsocket.
[10] The statutory provision at issue in Rice, section 2, chapter 23 of the General Laws of 1909, read in pertinent part: No license shall be granted for the sale of spirituous or intoxicating liquors "in any building or place . . . within two hundred feet, measured by any public way, of the premises of any public or parochial school." *Page 1