DECISION
The Appellants, eleven Rhode Island-based package stores holding Class A liquor licenses, appeal a Rhode Island Department of Business Regulation ("DBR") decision granting summary judgment in favor of the DBR. A DBR Hearing Officer determined that the Appellants' use of essentially the same business name violates G.L. 1956 §3-5-11(b)(1)(vi), which prohibits licensees from using "[a]ny term or name identified as a chain or common entity." The Hearing Officer found that the Appellants' business names identified them as a chain or common entity in violation of G.L. 1956 § 3-5-11(a) and ordered the Appellants to pay an administrative penalty of $5,000 each and suspended their licenses for a period of ten (10) business days. The Hearing Officer further required Appellants to seek DBR approval of any business name changes and to cease and desist from conducting any licensed activity until the DBR approves the use of a name for each of them.
The Appellants appeal the DBR decision on four grounds. First, they assert that G.L. 1956 § 3-5-11, facially and in the manner of its enforcement by the DBR, violates the Appellants' rights secured under the First Amendment of the United States Constitution. The Appellants also argue that federal trademark laws preempt the DBR's statutory authority to *Page 2 
regulate trade names. Third, they contend that the DBR decision violates the dormant Commerce Clause in Article I, Section 8 of the United States Constitution. Finally, the Appellants claim that the DBR decision constitutes the taking of a vested, federally recognized property right protected by the Fifth Amendment of the United States Constitution.
The Appellants now seek to have this Court overturn the DBR Decision. This Court has jurisdiction over the instant appeal pursuant to G.L. 1956 § 42-35-15(g). For the reasons set forth below, this Court affirms the DBR Decision and denies the appeal.
 FACTS AND TRAVEL
Each of the Appellants is a Class A liquor license-holder engaging in the retail sale of alcoholic beverages pursuant to G.L. 1956 §§ 3-2-2et seq., 3-5-1 et seq., and 3-7-1 et seq. Under §§ 3-7-1 and 3-7-3, "a retailer's Class A license authorizes the holder to keep for sale and to sell at the place described beverages at retail and to deliver the beverages in a sealed package or container, which package or container shall not be opened nor its contents consumed on the premises where sold." The DBR has jurisdiction to regulate and control the sale of alcoholic beverages in Rhode Island pursuant to §§ 3-2-2, 3-5-1 etseq., and 3-7-1 et seq. and §§ 42-14-1 and 42-14-2. Pursuant to § 3-5-11, the DBR may determine whether any group of one or more Class A liquor licensees constitutes a "chain store organization" following an evidentiary hearing.
During the DBR hearing, the Appellants and the DBR filed cross-motions for summary judgment on whether the Appellants' use of their business names violated the provisions of G.L. 1956 § 3-5-11(b)(1)(vi).[1] For summary judgment purposes, the DBR and the Appellants *Page 3 
stipulated that three (3) of the Appellants conduct business under the name "People's Liquor Warehouse," and eight (8) operate under the business name "Douglas Wine Spirits." All eleven of these Class A licensees append different geographic locations to their names — for example, "Peoples Liquor Warehouse — Hopkinton." The DBR argued that summary judgment was proper because the Appellants' use of the same business name — distinguished only by a reference to geographic location — violates § 3-5-11(b)(1)(vi).
In support of their cross-motion for summary judgment, Appellants argued that the DBR's interpretation and application of §3-5-11(b)(1)(vi) should fail because: (i) the DBR abused its discretion in enforcing the statute; (ii) the DBR's interpretation and application of § 3-5-11(b)(1)(vi) is an unconstitutional and arbitrary infringement upon protected commercial speech; and (iii) § 3-5-11 violates the Commerce Clause and the Sherman Anti-Trust Act.
In the DBR Decision, the DBR Hearing Officer discussed legislative intent, statutory construction, and the mandates that the General Assembly imposed on the DBR with respect to the regulation of alcoholic beverages. The Hearing Officer declined to rule on the Appellants' constitutional claims, because she recognized that an administrative agency of the executive branch of government cannot determine the constitutionality of a statute at issue. See Easton's Point Assoc. v.Coastal Resources Mgmt. Council, 522 A.2d 199, 202 (R.I. 1987) (holding that administrative agencies are circumscribed from considering constitutional challenges during the course of a licensing or permit proceeding). She further explained that only the judicial branch *Page 4 
can make such a determination. The Hearing Officer also noted that some of the Appellants had brought a constitutional challenge § 3-5-11 before the United States District Court for the District of Rhode Island. That case did not go to trial until approximately one month after the DBR released its decision in May, 2006.
According to the Hearing Officer, the General Assembly intended Title 3 of the Rhode Island General Laws (the Alcoholic Beverages statutes) to control, regulate, penalize, and monitor activities related to liquor. Section 3-2-2(a) of the Rhode island General Laws gives the DBR "general supervision of the conduct of the business of manufacturing, importing, exporting, storing, transporting, keeping for sale, and selling beverages." Thus, the Hearing Officer determined that the prohibitions set forth in § 3-5-11 served to create uniformity and consistency in the sales, advertising, supervision, and control of conduct of the business of selling alcohol beverages consistent with the purposes of the Alcoholic Beverages statutes. See G.L. 1956 § 3-1-5 (stating that "purpose [of Title 3] is the promotion of temperance and for the reasonable control of the traffic in alcoholic beverages"). The Hearing Officer held that the DBR had clear, unambiguous statutory mandates to determine whether Class A liquor licensees were operating as a "chain store organization" when they used a term or name identified as a chain or common entity.
In her decision, the Hearing Officer also determined that the DBR's interpretation of § 3-5-11 did not constitute an abuse of the agency's discretion and that the DBR did not selectively apply the statute to the Appellants. She held that, in DBR Bulletin 2005-2 of September 21, 2005, the DBR provided clear guidelines to Class A licensees who had the same or similar business name as another Class A retailer. The Bulletin explicitly stated that the DBR would not consider adding a location to an existing similar name a sufficient differentiation of name to *Page 5 
satisfy § 3-5-11. Additionally, the Hearing Officer determined that the Appellants had defied the DBR mandate by merely appending locations to "Peoples Liquor Warehouse" and "Douglas Wine Spirits." The Hearing Officer concluded that the Appellants' current names exemplify the exact rationale for requiring distinguishable names in order to prevent the misperception of a chain store or common entity. Thus, the Hearing Officer found that the names currently used by the Appellants were not easily distinguishable, appeared to be a chain or common entity, and therefore clearly violated § 3-5-11(b)(1)(vi). Although the DBR sought to revoke the Appellants' licenses, the Hearing Officer imposed administrative penalties pursuant to § 3-5-11(b)(4) that included a 10-day suspension, a cease and desist order, an administrative penalty of $5,000 for each licensee, and the dissolution of the chain store organization.
The Director of the DBR approved the Hearing Officer's recommended decision on May 24, 2006. On or about June 16, 2006, the Appellants filed a timely Complaint of Appeal pursuant to § 42-35-15. This Court granted a Motion for a Stay of the Order pending further review.
On September 28, 2004, the franchisor, Wine Spirits Retailers, Inc., filed suit in the United States District Court for the District of Rhode Island, alleging that §§ 3-5-11 and 3-5-11.1 violated the franchisor's constitutional rights pursuant to the First Amendment, the Commerce Clause contained in Article I, Section 8, the Takings Clause of theFifth Amendment and the Fourteenth Amendment's guarantees of Equal Protection. The franchisor requested a preliminary injunction against enforcement of the amended provisions, which the District Court denied.See Wine Spirits Retailers, Inc. v. Rhode Island, 364 F.Supp. 2d 172
(D.R.I. 2005) (Wine Spirits Retailers (I)). The franchisor thereafter appealed the District Court's denial to the United States Court of Appeals for First Circuit, which upheld the District Court's decision.See Wine Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36 (1st Cir. 2005) (Wine Spirits Retailers *Page 6 (II)). Subsequently, the franchisor amended the complaint to add three new store plaintiffs: the Douglas Wine Spirits stores in Cumberland, Cranston, and North Providence. On July 10 and 11, 2006, the District Court held a bench trial on the franchisor and stores' federal complaint. The District Court decision rejected all constitutional arguments pressed by the plaintiffs in that action. (See Transcript of the District Court Decision in Wine Spirits Retailers, Inc. v.Greer, C.A. 04-418T, July 19, 2006) Subsequently, the First Circuit affirmed the District Court's decision and found that the General Assembly had acted in the public interest in enacting G.L. 1956 § 3-5-11
and did not cross any constitutional boundaries. See Wine SpiritsRetailers, Inc. v. Rhode Island, 481 F.3d 1 (1st Cir. 2007) (Wine Spirits Retailers (III)).
 STANDARD OF REVIEW
The Court reviews contested agency decisions pursuant to the provisions of the Rhode Island Administrative Procedures Act, G.L. 1956 § 42-35-15(g). Section 42-35-15(g) provides that:
 [t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on the questions of fact. The court may affirm a decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In access of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in light of reliable, probative, and substantial evidence on the
 whole record; or *Page 7 
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
In reviewing an agency decision, the Court will not weigh the evidence upon which findings of fact are based, but will limit itself to an examination of the certified record in deciding whether the agency had substantial evidence to support its decision. Ctr. for BehavioralHealth, Rhode Island, Inc. v. Barros, 710 A.2d 680, 684 (R.I. 1998). The Rhode Island Supreme Court has defined "substantial evidence" as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." Newport Shipyard, Inc. v. R.I. Comm'n for HumanRights, 673 A.2d 457, 459 (R.I. 1996). Moreover, the Court will not substitute its judgment for that of an administrative agency as to the weight of the evidence on questions of fact, even if the Court "might be inclined to view the evidence differently and draw inferences different from those of the agency." Johnston Ambulatory Surgical Assocs., Ltd. v.Nolan, 755 A.2d 799, 805 (R.I. 2000) (quoting Rhode Island Pub.Telecomm. Auth. v. Rhode Island State Labor Relations Bd., 650 A.2d 479,485 (R.I. 1994)). Therefore, the Court may reverse findings of fact only where an agency's factual conclusions are "totally devoid of competent evidentiary support in the record," Baker v. Dep't of Employment andTraining Bd. Of Review, 637 A.2d 360, 363 (R.I. 1994) (quotingMilardo v. Coastal Res. Mgmt. Council, 434 A.2d 266, 272 (R.I. 1981)). Although the Court may freely conduct de novo review of an agency's determinations of law, Arnold v. R.I. DOL Training Bd. of Review,822 A.2d 164, 167 (R.I. 2003) (citing Johnston Ambulatory SurgicalAssocs., 755 A.2d at 805), "the law in Rhode Island is well settled that an administrative agency will be accorded great deference in interpreting a statute whose administration and enforcement have been entrusted to the agency." In re Lallo, 768 A.2d 921, 926 (R.I. 2001) (citing In re Advisory Opinion to the Governor, 732 A.2d 55, 76 (R.I. 1999); *Page 8 Pawtucket Power Assocs. Ltd. Partnership v. City of Pawtucket,622 A.2d 452, 456 (R.I. 1993); Defenders of Animals, Inc. v. Dept. of Envtl.Mgmt., 553 A.2d 541, 543 (R.I. 1989) (attributing great weight to an agency's construction of a regulatory statute when the provisions of the statute were unclear)).
 ANALYSIS I The Weighing of Evidence by the Hearing Officer
The Appellants allege that that the Hearing Officer arbitrarily enforced G.L. 1956 § 3-5-11 and ask this Court to review the factual determinations of the Hearing Officer. Additionally, the Appellants assert that this Court should quash the DBR's interpretation and application of § 3-5-11 because the DBR abused its discretion and because the Hearing Officer should have used less drastic means to achieve compliance with the statute. Furthermore, the Appellants maintain that the statute does not articulate the harm resulting from the existence of a chain store organization or consumer perception of this existence. The Appellants also contend that because the DBR would allow the use of the full, legal name of the individual owner associated with the name of the licensee, the DBR has acted arbitrarily by allowing, for example, the use of "Kathleen Haronian's Douglas Wine Spirits-North Providence, Inc." but not "Douglas Wine Spirits-North Providence." The Appellants allege that there is no difference in the two names, and, therefore, the criteria used by the DBR to enforce the statute are arbitrary.
In evaluating the facts of the case, the Hearing Officer found that DBR Bulletin 2005-2 had "clearly set forth guidelines to allow entities and individuals to distinguish their names to minimize the use of a chain or common entity." (DBR Decision at 14.) The Hearing Officer also held that the names currently used by the Appellants "are not easily distinguishable, appear to be a chain or common entity and therefore, are clearly in violation of [G.L. 1956] § 3-5- *Page 9 
11(b)(1)(vi)." (Id. at 15.) The Hearing Officer also considered the factual arguments asserted by the Appellants regarding alternative means of enforcement and rejected their proposals to add "independently owned and operated" and "not a chain store" to the business names, because the presence of any similar term or name identified as a chain or common entity among entities sends mixed messages to the consumer and is not a reasonable application of § 3-5-11(b)(1)(vi) prohibitions. (Id. at 18.)
"The law in Rhode Island is well-settled that an administrative agency will be accorded great deference in interpreting a statute whose administration and enforcement have been entrusted to the agency."State v. Cluley, 808 A.2d 1098, 1103 (R.I. 2002) (quoting In reLallo, 768 A.2d 921, 926 (R.I. 2001)). "Use of the arbitrary and capricious standard means that reviewing courts will uphold administrative decisions . . . as long as the administrative interpreters have acted within their authority to make such decisions and their decisions were rational, logical, and supported by substantial evidence." Goncalves v. NMU Pension Trust, 818 A.2d 678, 682-683 (citingDoyle v. Paul Revere Life Insurance Co., 144 F.3d 181, 184 (1st Cir. 1998)). Deference must also be given to an agency's interpretation even if the statute is ambiguous. See Pawtucket Power Assocs. Ltd. P'ship v.City of Pawtucket, 622 A.2d 452, 456-457 ("Deference is accorded even when the agency's interpretation is not the only permissible interpretation that could be applied.").
In matters of statutory interpretation, the Rhode Island Supreme Court has consistently held that the courts' "ultimate goal is to give effect to the purpose of the act as intended by the Legislature." Silva v.Fitzpatrick, 913 A.2d 1060, 1063 (R.I. 2007) (quoting Webster v.Perotta, 774 A.2d 68, 75 (R.I. 2001)). In order to effectuate the intent of the Legislature, courts must examine a statute "in its entirety and [attribute] to words their plain and ordinary meaning." *Page 10 LePage v. Babcock, 839 A.2d 1226, 1230 (R.I. 2004) (citing Kent CountyMental Health Center, Inc. v. Cavanaugh, 659 A.2d 120, 122 (R.I. 1995)). Additionally, courts "shall not ascribe to the Legislature an intent to enact legislation that is devoid of any purpose, is inefficacious, or is nugatory." Pullen v. State, 707 A.2d 686, 691 (R.I. 1998) (quotingCocchini v. City of Providence, 479 A.2d 108, 111 (R.I. 1984)). In cases of ambiguous statutory language, courts must then consider legislative intent. Providence Journal Co. v. Rodgers, 711 A.2d 1131, 1134 (R.I. 1998). In interpreting a legislative enactment, courts will "determine and effectuate the Legislature's intent" and "attribute to the enactment the meaning most consistent with [the Legislature's] policies or obvious purposes." Park v. Ford Motor Co., 844 A.2d 687, 692 (R.I. 2004) (quoting Dias v. Cinquegrana, 727 A.2d 198, 199-200 (R.I. 1999)).
As noted by the DBR Hearing Officer, in Title 3 of the General Laws of Rhode Island — entitled "Alcoholic Beverages" — the Rhode Island General Assembly adopted a comprehensive statutory scheme to regulate many facets of the liquor industry within this state.[2] (DBR Decision at 12.) The provisions of Title 3 reflect legislative intent to control, regulate, penalize, and monitor activities related to alcohol. (Id.) Section 3-1-5, for example, states that "[t]his title shall be construed liberally in aid of its declared purpose which declared purpose is the promotion of temperance and for the reasonable control of the traffic in alcoholic beverages." (Id.) Furthermore, § 3-2-2 gives the DBR "general supervision of the conduct of the business of manufacturing, importing, exporting, storing, transporting, keeping for sale, and selling *Page 11 
beverages." (Id.) Under § 3-5-1 et seq., the DBR's supervisory authority extends to regulating licenses for the manufacture, sale or importation of alcoholic beverages. (Id.)
In light of the regulatory authority granted to the DBR, the DBR Hearing Officer analyzed the purpose and scope of the statutes at issue, §§ 3-5-11(b)(1)(vi) and 3-5-11.1 (prohibiting liquor franchises), in the context of Title 3's statutory scheme. (Id.) Section 3-5-11.1 states that the liquor franchise prohibition "promote[s] the effective and reasonable control and regulation of the Rhode Island alcoholic beverage industry and to help the consumer by protecting their choices and ensuring equitable pricing." (Id.) As noted by the Hearing Officer, this statutory scheme, coupled with the statutory definition of "chain store organization" under R.I. Gen. Laws § 3-5-11(b)(1)(vi), provides the legislative basis for Department to regulate the sale of liquor by limiting the names or other terms used by licensees identified as a chain or common entity. (Id.)
The Hearing Officer also correctly observed that the Rhode Island Supreme Court has consistently upheld the DBR's authority to regulate the liquor industry. (Id.) The Supreme Court confirmed that Rhode Island's Liquor Control Administrator — subsequently replaced by the DBR — serves as a "superlicensing board" with a broad and comprehensive power of review. Hallene v. Smith, 201 A.2d 921, 924 (R.I. 1964) (holding that de novo review is necessary to fulfill the legislative intent to "provide broad and comprehensive control by the State over the liquor traffic and to vest that control in an administrative body");Tedford v. Reynolds, 141 A.2d 264, 267 (R.I. 1958); Baginski v.Alcoholic Beverage Commission, 4 A.2d 265, 268 (R.I. 1939). See Clark v.Alcoholic Beverage Comm'n, 170 A. 79, 80 (R.I. 1934). This authority derives in part from the general supervisory authority in matters related to liquor licensing vested in the DBR through §§ 3-1-5 and 3-2-2.See Thompson v. Town of East Greenwich, 512 A.2d 837, 842 *Page 12 
(R.I. 1986). The General Assembly vested this authority in the DBR, because an "unsupervised system of local regulation" and a "lack of uniformity" in administering the law would result in "grave abuses which, as a matter of common knowledge, seriously [affect] public welfare." Baginski, 4 A.2d at 267. The Rhode Island Supreme Court has stated that the legislature expressly provided for state control and has adopted a system for administering such control in the manner that it deems the most likely to be productive of the public good. Bd. ofLicense Commissioners v. Daneker, 79 A.2d 614, 617 (R.I. 1951). This Court concurs with the Hearing Officer's analysis that §§ 3-5-11 and3-5-11.1 create uniformity and consistency in the sales, advertising, supervision, and control of conduct of the business of selling alcoholic beverages consistent with the legislative intent of Title 3. (DBR Decision at 15.) Therefore, the DBR has the statutory mandate to determine whether Class A liquor licensees are operating as a "chain store organization" by using a term or name identified as a chain or common entity and determine an appropriate penalty for such prohibited activity. (Id.)
In DBR Bulletin 2005-2 and its December 15, 2005, amendment, the DBR promulgated guidelines for entities and individuals to distinguish their names to minimize the use of a chain or common entity. (Id.) As stated in the Bulletin, the DBR did not consider the adding of a location to an existing similar business name a sufficient differentiation. (Id.) Here, however, the Appellants proceeded to change their business names to increase their similarity to one another by adding locations in Rhode Island to identical business names — for example, Douglas Wine Spirits — 44 and Douglas Wine Spirits — Johnston. The Appellants argue that Paragraph 4 of the Bulletin allowed the use of a "full proper legal name," including their shared corporate name. However, this Court notes that the clear context of the example given in that paragraph indicates that the DBR intended to apply the "full proper legal name" standard to the name of an *Page 13 
individual person, not the name of a business entity. Here, the Appellants' name changes only serve to make their business names more similar and more indicative of a chain, thereby conflicting with the overall statutory intent.
As noted by the Hearing Officer, the DBR intended the criteria enunciated in the Bulletin "to inform its licensees and assist them in the enforcement of the statutory mandate while recognizing that some of the licensees had a personal stake in their businesses." (DBR Decision at 16.) Thus, the DBR allowed the "full proper legal name" of individuals to be attached to the name of the licensee. (Id.) Furthermore, the use of individual names clearly ties the license to an individual as distinguished from a business entity. The DBR Bulletin remains consistent with the requirements of § 3-5-11(b)(1)(vi), because consumers will more likely view a business entity name without reference to an individual's full proper name as a "chain or common entity." (Id.) Thus, the Appellants' current business names actually demonstrate the rationale for requiring distinguishable names in order to prevent consumer misperception that the Appellants' businesses were chain stores or common entities. (Id.)
The names currently used by the Appellants are not easily distinguishable, thereby violating § 3-5-11(b)(1)(vi). Therefore, the DBR Hearing Officer did not abuse her discretion in furthering Title 3's statutory scheme by finding that the Appellants violated DBR regulations. As the Hearing Officer noted, the names currently used by the Appellants "are not easily distinguishable, appear to be a chain or common entity and therefore, are clearly in violation of R.I. Gen. Laws § 3-5-11(b)(1)(vi)." (Id.) Upon a thorough examination of the entire record, this Court finds that the Hearing Officer's findings were not arbitrary and capricious or marked by an abuse of discretion. *Page 14 
 II Appellants' Constitutional Claims
In addition to proceedings before the DBR, three of the Appellants in the instant matter — Douglas Wine Spirits Cumberland, Douglas Wine Spirits North Providence, and Douglas Wine Spirits Cranston — filed suit against the State of Rhode Island in the United States District Court for the District of Rhode Island. In their federal case, the three Class A liquor licensees claimed that G.L. 1956 § 3-5-11(b)(1)(vi) violated their constitutional rights. The District Court rejected all the licensees' claims and held that § 3-5-11(b)(1)(vi) did not violate the licensees' rights. On appeal before the United States Court of Appeals for the First Circuit, the First Circuit affirmed the District Court decision and rejected all the licensees' constitutional challenges. These three licensees now join their fellow franchisees in appealing the DBR decision on largely identical constitutional grounds.
The doctrine of res judicata, or "claim preclusion," renders "a prior judgment in a civil action between the same parties conclusive with regard to any issues that were litigated in the prior action, or, that could have been presented and litigated therein." Waters v. Magee,877 A.2d 658, 666 (R.I. 2005) (citing Ritter v. Mantissa InvestmentCorp., 864 A.2d 601, 605 (R.I. 2005) (internal citations omitted)). Under res judicata, "[a] party defeated in one action cannot maintain a second action based on a ground which could properly have been, but was not, set forth and relied upon in the former action." JohnstonAmbulatory Surgical Assocs. v. Nolan, 755 A.2d 799, 808 (citing El Gabriv. Lekas, 681 A.2d 271, 275 (R.I. 1996) (internal citations omitted)). The doctrine "serves as an absolute bar to a second cause of action where there exists identity of parties, identity of issues, and finality of judgment in an earlier action." Mills v. Toselli, 916 A.2d 756, 757
(quoting El Gabri, 681 A.2d at 275 (internal citations omitted)). This Court will apply the preclusive effect of the res judicata doctrine to "all or any part of the *Page 15 
transaction, or series of connected transactions, out of which the action arose." El Gabri, 681 A.2d at 276 (quoting Restatement (Second) of Judgments § 24 (1982)).
In contrast, the doctrine of collateral estoppel makes conclusive in a later action on a different claim the determination of issues that were actually litigated in a prior action. Foster-Glocester Reg'l Sch. Comm.v. Bd. of Review, 854 A.2d 1008, 1014 (quoting E.W. Audet Sons, Inc.v. Firemen's Fund Insurance Co. of Newark, New Jersey, 635 A.2d 1181,1186 (R.I. 1994) (internal citations omitted)). "Collateral estoppel `means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" State v.Santiago, 847 A.2d 252, 254 (R.I. 2004) (quoting State v. Hie,688 A.2d 283, 284 (R.I. 1996)). Collateral estoppel requires "(1) that there [was] an identity of issues, (2) that the prior proceeding resulted in a final judgment on the merits, and (3) that the party against whom collateral estoppel is asserted [was] the same as or in privity with a party in the prior proceeding." State v. Pacheco, 763 A.2d 971, 980
(quoting E.W. Audet Sons, Inc., 635 A.2d at 1186). In order to meet the identity of issues requirement for preclusion, the issue: (1) must be identical to an issue determined in an earlier proceeding; (2) must actually have been litigated in a prior proceeding; and (3) must necessarily have been decided. State v. Godette, 751 A.2d 742, 746
(citing Hie, 688 A.2d at 285).
In four decisions arising from the same issues, the federal courts have consistently decided against the Appellants' constitutional claims. Federal judges have heard and ruled on all issues raised here on appeal, and all parties to this appeal were either parties to one or more of the federal actions or in privity with one or more of the parties. Parties are in privity when "there is a commonality of interest between the two entities' and when they `sufficiently represent' each other's interests." Duffy v. Milder, 896 A.2d 27, 36 (R.I. 2006) (quotingCommercial Union *Page 16 Insurance Co. v. Pelchat, 727 A.2d 676, 680 (R.I. 1999)). As fellow franchisees with identical legal interests in both the federal and state proceedings, all the Appellants in this case are in privity with the licensees who joined the franchisor in the federal complaint. In essence, the Appellants have had their day in court.
The appellants received a full federal bench trial before the District Court in Rhode Island. The District Court held that DBR policies banning the licensees' use of the same or similar business names pursuant to G.L. 1956 § 3-5-11(b)(1)(vi) did not violate any provisions of the United States Constitution. First, this ban did not implicate the licensees' First Amendment rights to freedom of speech or association by prohibiting common advertising and the use of a common name. (Tr. District Court Decision at 12.) Section 3-5-11(b)(1)(vi) of the Rhode Island General Laws does not prevent Class A licensees from using any name that they choose as long as it does not identify them as a chain store entity, since the statute does not restrict the message that may be conveyed by the stores. The statute solely targets the licensees' collaboration in setting products and prices — the precursor to any common advertising. As noted by the Federal District Court,
 [t]here is no other reason to use a common name unless that's the case. Indeed, the evidence shows that this is precisely the means that the plaintiffs have used in order to circumvent the statutory prohibition against chain stores or franchise operations.
(Federal District Court Decision at 13-14.) The Federal District Court also noted that the use of a common name did not constitute protected commercial speech.
 [C]ommon advertising or the use of a common name, which has no independent expressive significance and amounts to nothing more than a means for carrying out the concerted activity, . . . is prohibited by statute. To put it another way, common advertising and the use of a common name not only concerns unlawful activity, it is part and parcel of the unlawful activity. *Page 17 
(Tr. District Court Decision at 17.) Thus, the Federal District Court held the use of that name would unlawfully mislead consumers, because a common name conveys the message that the licensees' stores are members of a chain.
On appeal, the First Circuit affirmed the District Court's findings and determined that these findings were not clearly erroneous. According to the First Circuit, the District Court's findings
 graphically illustrate why the use of a shared trade name in the retail liquor market by supposedly independent package stores poses an area of legitimate concern for a state that has abolished franchise and chain-store arrangements in that market. The findings, therefore, comprise a showing sufficient to underpin the restriction enacted by the Rhode Island General Assembly.
Wine Spirits Retailers (III), 481 F.3d at 9. Thus, banning the use of common names does not impinge on any of the Appellants' First Amendment rights.
The District Court also held that the licensees "failed to come close" to showing that G.L. 1956 § 3-5-11(b)(1)(vi) violated the licensees' rights under the Commerce Clause of the United States Constitution.See U.S. Const. art. I, § 8. According to the District Court, G.L. 1956 § 3-5-11 does not facially discriminate against interstate commerce or out-of-state interests. (Tr. District Court Decision at 21.) "The statutory prohibitions against the sale of liquor by chain store organizations and/or franchise operations make no distinction whatever between in-state entities and out-of-state entities," because they apply across the board regardless of whether the chain store or franchisee is local or out-of-state. (Id.) Furthermore, the District Court found no compelling evidence of discriminatory effect. During their federal trial, the licensees relied on Walgreen Co. v. Rullan, 405 F.3d 50 (1st Cir. 2005). In Walgreen, a commonwealth statute in Puerto Rico exempted existing pharmacies — roughly 92% of which were locally owned — from complying with a set of facially neutral *Page 18 
statutory requirements. Walgreen, 405 F.3d at 55-56. The statute also allowed those "grandfathered" pharmacies to wield great influence in the enforcement of the statutory requirements as applied to new entrants.Id. Statistical data adduced at trial "strongly indicate[d]" that the statute suppressed competition and favored local interests.Id. at 56. In the licensees' federal trial, however, the licensees failed to provide evidence that Rhode Island's prohibition on franchise and chain-store arrangements has had, or threatens to have, a debilitating or unfair impact either on competition in general or on out-of-state enterprises in particular. As noted by the Federal District Court, "Rhode Island licensees, and in particular local licensees, do not wield any power to delay or deny competition by franchise operations or chain store organizations either out-of state or in-state."(Tr. District Court Decision at 24.)
During the licensees' federal appeal, the First Circuit affirmed the District Court's findings regarding the alleged violation of the licensees' rights under the Commerce Clause. The First Circuit held that "the statutory scheme at issue here does not favor in-state interests at all." Wine Spirits Retailers (III), 481 F.3d at 14. Furthermore, "a state regulation that burdens some interstate firms `does not, by itself, establish a claim of discrimination against interstate commerce.'" Id. at 14-15 (quoting Exxon Corp. v. Gov. of Md.,437 U.S. 117, 126 (1978)). Although the laws enacted by the Rhode Island General Assembly may have had a negative impact on Wine Spirit's business model, this effect alone is not sufficient to show discriminatory effect. Id. at 15. According to the First Circuit, the plaintiffs merely showed that the statutes'
 neutral, evenhanded requirements . . . incidentally burden interstate commerce by precluding various methods of distribution in the retail liquor market. That is not enough. In order to invalidate the requirements, any such burden would have to be "clearly excessive in relation to the putative local benefits." *Page 19 
Id. (quoting Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970)). On the grounds of res judicata, this Court holds that the federal court findings regarding the alleged Commerce Clause violations are dispositive.
The District Court next addressed and rejected the licensees' claim that the statute constituted an unconstitutional taking of private property in violation of the Fifth Amendment. The District Court found that the licensees had no reasonable investment-backed property rights, because the licensees never had any "right" to engage in the franchise sale of liquor, since Rhode Island has prohibited chain stores from possessing Class A liquor licenses since 1933. (Tr. District Court Decision at 27.) Although the DBR's franchise division approved the franchise agreement, the District Court determined that
 the franchise division has no regulatory responsibilities with respect to liquor sales, and apparently was unaware of the prohibition against franchise sales of liquors, was unaware that under Rhode Island law franchise sales of liquor is treated differently from franchise sales of other products.
(Id. at 28.) Furthermore, the statute does not prohibit the licensees from operating liquor stores, so no regulatory taking occurred in this case. Finally, the District Court disposed of the licensees' taking claim by noting that the liquor industry is heavily regulated, and therefore "it [is] unreasonable to expect that the regulations governing liquor sales will not be amended from time to time when necessary to close loopholes or to further the goals of the regulation." (Tr. District Court Decision at 29.) Although the First Circuit did not address the Fifth Amendment taking issue on appeal, this Court finds that on the basis of collateral estoppel, the Appellants' federal proceedings preclude this Court from ruling on this claim.
Finally, the District Court addressed the licensees' Equal Protection claims and determined that G.L. 1956 § 3-5-11 did not violate the licensees' constitutional rights. "The *Page 20 
Rhode Island statute is economic legislation that does not employ suspect classifications or impinge on fundamental rights." (Id. at 30.) The licensees did not show that the statute discriminates against Class A retail liquor stores, because the statute treats all Class A licensees the same, and Class A licensees are not so similarly situated to businesses like wineries and beerpubs that the difference in treatment is arbitrary and irrational. (Id. at 30-31.) Additionally, multiple Class A liquor licensees using an identical family name do not violate the statute, because these stores do not "engage in common advertising, common pricing or any of the other concerted activities in which the [licensees] engage." (Id. at 33.) The District Court found that allowing individual licensees to use a common family name, but denying other stores to use names differentiated only by geography, was not arbitrary or irrational. (Id.) According to the District Court,
 Rhode Island did not act irrationally in prohibiting sales by chain store organizations and/or franchise operations; that as evidenced by the techniques utilized by plaintiffs in attempting to circumvent that ban, the prohibitions in Section 3-5-11 of concerted activities characteristic of chain store operations are necessary to implement that ban; that those prohibitions do not infringe on any of the plaintiffs constitutionally protected rights of speech and/or association; that the statute does not discriminate against interstate commerce; that neither the statute or [sic] the manner in which it is interpreted or enforced violates the plaintiffs right to equal protection; and that the ban does not constitute any taking of any property of the plaintiffs.
(Id. at 34). On appeal, the First Circuit applied rational basis scrutiny to the licensees' equal protection challenges to Rhode Island's economic legislation. See Wine Spirits (II), 418 F.3d at 53 (citingHodel v. Indiana, 452 U.S. 314, 331 (1981)). Using rational basis scrutiny, the First Circuit upheld G.L. 1956 § 3-5-11, because the means chosen by the General Assembly were rationally related to a legitimate government purpose: "the promotion of temperance and for the reasonable control of the traffic in alcoholic beverages." Wine Spirits(III), 481 F.3d at 13 *Page 21 
(citing G.L. 1956 § 3-1-5). Accordingly, this Court is collaterally estopped from reconsidering the ruling of the federal courts on this matter.
 CONCLUSION
After review of the entire available record, the Court holds that the Hearing Officer based her decisions on reliable, probative, and substantial evidence and her findings were not affected by error of law. The agency decision was not arbitrary or capricious, and they did not result from any abuse of discretion by the Hearing Officer. Thus, Appellants' substantial rights have not been prejudiced. Furthermore, the federal courts have rendered final judgment on the merits with regard to the Appellants' constitutional claims. Pursuant to the doctrines of res judicata and collateral estoppel, this Court will not disturb the federal court decisions. For the reasons stated above, this Court affirms the Hearing Officer's decisions finding that Appellant violated G.L. 1956 § 3-5-11(b)(1)(vi).
Counsel for appellee shall prepare an appropriate judgment for entry.
[1] G.L. 1956 § 3-5-11(b) provides, in pertinent part, that: The term "chain store organization" is defined to include, but not limited to:
 (1) Any group of one or more holders of Class A liquor licenses who engage in one or more of the following practices with respect to the business conducted under such licenses, either directly or indirectly, or have any direct or indirect beneficial interest in the following practices: . . .
 (vi) Any term or name identified as a chain or common entity.
[2] The regulatory measures of Title 3 include: Chapter 4 — Transportation of Beverages; Chapter 5 — Licenses (including, state and local licensing provisions, limitations on the number of licenses that a licensee may hold, and manufacturer and wholesaler licenses); Chapter 6 — Manufacturing and Wholesale Licenses; Chapter 7 — Retail Licenses; Chapter 8-Regulation of Sales; Chapter 9 — Adulterated Liquors; Chapter 10 — Taxation of Beverages; Chapters 11 and 12 — Penalties and Liabilities and Enforcement of Title; Chapter 13 — Malt Beverage Supplier-Wholesaler Agreements; and Chapter 14 — The Rhode Island Liquor Liability Act. *Page 1