397 A.2d 497.

STATE *vs.* MICHAEL R. SMYTH.

JANUARY 29, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

DORIS, J.    This case presents a novel legal issue. We are asked to decide whether a defendant who intentionally drives his truck into the rear end of an automobile, causing personal injury to the occupants of that automobile, and then departs the scene without identifying himself or rendering aid, can be convicted of leaving the scene of an accident under G.L. 1956 (1968 Reenactment) §31-26-1.[1]

If we answer this question in the affirmative, we are then asked to consider whether the reporting requirements of this statute violate the Rhode Island constitutional protection against self-incrimination.[2]

On March 20, 1976, at about 1 p.m., defendant Michael R. Smyth was driving his truck on Washington Street in West Warwick. There he observed an automobile occupied by

---

[1] This statute requires that drivers involved in accidents resulting in personal injury comply with the duties prescribed by G.L. 1956 (1968 Reenactment) §31-26-3 (Supp. 1977), which states in pertinent part:

> "The driver * * * shall, upon request, give his name, address and the registration number of the vehicle he is driving and shall exhibit his operator's or chauffeur's license to the person struck or the driver or occupant or the person attending any vehicle collided with and shall render to any person injured in such accident reasonable assistance, and shall immediately, by the quickest means of communication known to him or which should have reasonably been known to him to be available in the locality give notice of such accident to a nearby office of local or state police.
> * * *
> "The officer receiving such notice shall, if the circumstances reasonably require, immediately dispatch an ambulance or emergency medical service to the scene of the accident."

[2] R.I. Const. art. I, §13.

Kevin Breedon and Alfred Francis, individuals whom he suspected of having previously broken into his apartment. Upon seeing these believed malefactors, Smyth speeded up and rammed the Breedon-Francis car in the rear. Although the record is silent concerning the speed of Smyth's car at impact, it was sufficient to cause Breedon to suffer neck, back and chest injuries, and Francis to suffer back injuries. After the collision Smyth left his truck and struck Francis about the head and neck with a nightstick. When the police arrived, Smyth drove away and was apprehended a short distance from the scene of the collision. Smyth was charged with leaving the scene of an accident where personal injury had resulted.

On March 9, 1977, defendant was tried in a jury-waived session of the Superior Court. The facts were largely undisputed. Counsel for both the prosecution and the defense stipulated to the admission of the arresting police officers' reports, the hospital reports of Breedon and Francis, and the witness statements given to the police by Breedon and Francis.

The defendant was the only person to testify. He stated that he deliberately sought out and struck the Breedon-Francis car. But he did that, he stated, only to get their attention in order to stop them. He further testified that he had not attempted to flee the scene, but rather had departed in order to locate a parking space.

At the conclusion of the evidence, defendant argued that he had not violated the statute because an *intentional* collision was not an "accident" within the purview of the so-called hit-and-run statute. The trial court avoided addressing the merits of this argument, however, by finding as fact that Smyth was untruthful when he testified that he deliberately struck the other car. After resolving that issue, the court found defendant guilty.

Our review of the record, however, reveals no competent evidence to support this factual finding. The trial justice was

bound to accept as true the facts contained in the police, hospital, and witness reports admitted by stipulation. *See, e.g., Mart Realty, Inc.* v. *Norberg,* 111 R.I. 402, 303 A.2d 361 (1973); *Merlino* v. *Tax Assessors,* 114 R.I. 630, 337 A.2d 796 (1975). These reports stated that defendant intentionally drove his truck into the rear end of the other vehicle. Notwithstanding the trial court's opinion of Smyth's veracity, the court was not free to disregard this uncontroverted evidence. We hold, therefore, that the lower court's finding on this factual issue was clearly wrong. *See Jonklaas* v. *Silverman,* 117 R.I. 691, 370 A.2d 1277 (1977).

We next consider whether defendant, by leaving the scene of an intentional collision, had left the scene of an "accident" within the meaning of the statute. The word "accident" has frequently been defined, and its definition has varied according to its context. For example, in actions to recover under insurance policies, victims of intentional automobile assaults have been held to have been injured in "accidents." *Nationwide Mutual Insurance Co.* v. *Roberts,* 261 N.C. 285, 134 S.E.2d 654 (1964); *Hartford Accident & Indemnity Co.* v. *Wolbarst,* 95 N.H. 40, 57 A.2d 151 (1948). On the other hand, it has been held that the aggressor committing the intentional act — unlike the victim — has not been involved in an accident. *Scarborough* v. *World Insurance Co.,* 244 N.C. 502, 94 S.E. 558 (1956). Likewise, we have held that the term "accident" in an automobile tort action includes negligent as well as faultless conduct. *Camaras* v. *Moran,* 100 R.I. 717, 219 A.2d 487 (1966); *cf. Gillis* v. *Transit Corporation of Norfolk,* 193 N.C. 346, 137 S.E. 153 (1927). Thus, the term "accident" is a generic concept requiring examination of its environs in order to define it.

The statute before us is a penal statute that requires a participant in a highway accident resulting in personal injury to render aid to persons injured by the accident, to exhibit his or her driver's license to the other parties to the accident, and to notify the police of the accident. The purpose of this statute is to protect by its aid provision persons injured on the

highway and to assure by its disclosure provisions that financial responsibility for the accident can be fairly assessed. The statute, however, is unconcerned with the cause of the accident — whether it be by act of God, by negligent conduct, by willful or wanton conduct, or by intentional act.[3]

We do not believe that the statute's reporting requirements should depend on the mental state of the actor involved in a vehicular collision. From the viewpoint of the perpetrator of an intentional act, the act is surely not an accident within the more common definition of the term. But from the perspective of the injured victim, the primary beneficiary of the statute, he or she has been involved in an accident and needs the same protections afforded other highway casualties. Therefore, we believe that the Legislature intended the term "accident" to include all automobile highway collisions — intentional as well as unintentional[4] — where personal injury occurs.[5] *But see People* v. *Berger,* 61 Misc.2d 120, 304 N.Y.S.2d 1011 (1969).

We now turn to the constitutional issue raised by defendant. He argues that our hit-and-run statute contravenes the protection against self-incrimination contained in the Rhode Island Constitution. We initially observe that in *California* v. *Byers,* 402 U.S. 424, 91 S. Ct. 1535, 29 L. Ed. 2d 9 (1971),

---

[3]Clearly the Legislature intended that persons causing accidents by wilful or wanton conduct amounting to criminal negligence be subject to the mandates of G.L. 1956 (1968 Reenactment) §31-26-1. Such conduct is the functional equivalent to the intent, or scienter, necessary for criminal liability. We doubt that the Legislature intended that §31-26-1 should apply to criminally-negligent highway conduct but not to intentionally-criminal highway conduct.

[4]We note that in a companion section of the Accident Report Chapter, §31-26-4 (duty on collision with unattended vehicle), the word "collision" is used interchangeably with the word "accident."

[5]This holding comports with the doctrine that penal statutes should be narrowly construed. *Hunter* v. *Narragansett Elec. Lighting Co.,* 50 R.I. 196, 146 A. 624 (1929). As we have indicated, the legislative intent behind the statute before us is clear. We are therefore obliged to interpret the statutory language in a narrow yet consistent manner with that intent.

the Supreme Court rejected a similar challenge to a hit-and-run statute brought under the fifth amendment to the United States Constitution. The *Byers* Court reasoned that "the mere possibility of incrimination is insufficient to defeat the strong policies in favor of a disclosure called for by statutes like the one challenged here." *Id.* at 428, 91 S. Ct. at 1538, 29 L. Ed. 2d at 17. The statute in question, noted the Court, was an essentially regulatory as opposed to criminal statute directed at all automobile drivers.

Our statute, like the one examined in *Byers*, is likewise not aimed at a "highly selective group inherently suspect of criminal activities." *E.g., United States* v. *Sullivan,* 274 U.S. 259, 47 S. Ct. 607, 71 L. Ed. 2d 1037 (1927) (gamblers). Nor does it apply to "an area permeated with criminal liability." *E.g., Albertson* v. *Subversive Activities Control Board,* 382 U.S. 70, 86 S. Ct. 194, 15 L. Ed. 2d 165 (1965) (subversive activities registration). Moreover, on a previous occasion we have held that the reporting requirements of the sister statute of the one before us, §31-26-4 (Supp. 1977) (duty on collision with unattended vehicle), were not incriminating. We stated that:

> "We do not perceive that the required statement calls for information so detailed as to suggest, let alone admit, that the collision was the result of conduct amounting to a misdemeanor. Rather, we believe, and so hold, that the requirements of a statute are met by leaving a statement written in the English language which acknowledges participation in the collision, together with the names and addresses of the driver and the owner of the colliding vehicle. With its use of the phrase 'circumstances of the collision,' the legislature was suggesting to the colliding operator such additional information as to him might seem pertinent. It could not and did not intend to require criminal self-incrimination." *State* v. *Lemme,* 104 R.I. 416, 424, 244 A.2d 585, 590 (1968).

In addition, we note that the Legislature has narrowly

restricted the evidentiary use of accident reports. G.L. 1956 (1968 Reenactment) §31-26-13 (Supp. 1977). Other than to allow the Division of Motor Vehicles to disclose that an individual has in fact filed a report, the statute forbids the use of the report in either a civil or a criminal trial. In light of the above, we do not believe that the disclosure required by the statute in the instant case is incriminating under the Rhode Island Constitution.

The defendant's appeal is denied and dismissed, the judgment of conviction is affirmed, and the case is remanded to the Superior Court.

*Julius C. Michaelson*, Attorney General, *John S. Foley*, Special Assistant Attorney General, for plaintiff.

*Aram K. Berberian*, for defendant.