**Michael R. DIAS**

v.

**Richard J. CINQUEGRANA et al.**

No. 98–38–Appeal.

Supreme Court of Rhode Island.

March 26, 1999.

Bernard Patrick Healy, Providence, for Plaintiff.

Thomas R. Bender, David P. Whitman, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on March 2, 1999, pursuant to an order that directed the parties to show cause why the issues raised by this appeal should not be summarily decided. The defendant, Virginia Cinquegrana (Virginia), has appealed from the entry of judgment following a jury ver-

dict for the plaintiff, Michael R. Dias, in the amount of $48,556.16, on the ground that the trial justice erred in finding that she could be held liable under G.L.1956 § 31–33–6. After hearing the arguments of counsel for the parties and reviewing their memoranda, we are of the opinion that cause has not been shown. Therefore, the appeal will be decided at this time.

On June 12, 1993, plaintiff and two friends were riding their motorcycles on Route 146 North when a black Nissan driven by defendant, Richard Cinquegrana (Richard), suddenly drove between them at a high rate of speed. Subsequently, plaintiff and his friends encountered the Nissan as they approached a stop sign. The motorcyclists and Richard exchanged words at the stop sign. As plaintiff and his friends began to drive forward, Richard intentionally struck plaintiffs motorcycle.[1] As a result of this collision, plaintiff sustained serious injuries.

On November 2, 1994, plaintiff filed an action alleging that he sustained personal injuries as a result of defendants' conduct.[2] Trial was held on June 9 and 10, 1997. At the conclusion of trial, Virginia moved for entry of judgment on her behalf,[3] arguing that she was not liable because the word "accident" in § 31–33–6 did not encompass intentional torts. After the jury returned a verdict in favor of plaintiff and awarded him $37,000 plus interest, the trial justice concluded that § 31–33–6 included intentional as well as unintentional acts, and he denied Virginia's motion for judgment as a matter of law. After Virginia's renewed motion for judgment as a matter of law was denied, she filed a timely notice of appeal, arguing that § 31–33–6 does not impose liability on an automobile owner when injuries to a third party resulted from a driver's intentional

conduct, as opposed to a driver's accidental conduct.

At common law, an automobile owner was shielded from liability for the negligence of a person to whom the owner entrusted the vehicle unless such negligence occurred while the operator was engaged in conducting business for the owner. *Ostrosky v. Sczapa*, 739 F.Supp. 715, 717 (D.R.I.1990). The enactment of § 31–33–6 abrogated this common law rule by statutorily extending the liability of an automobile owner to situations in which no common law agency relationship existed. *Ostrosky*, 739 F.Supp. at 717. Section 31–33–6 provides, in relevant part:

"Owners liability for acts of others.— Whenever any motor vehicle shall be used, operated, or caused to be operated upon any public highway of this state with the consent of the owner, or lessee, or bailee, thereof, expressed or implied, the driver thereof, if other than the owner, or lessee, or bailee, shall in the case of an accident be deemed to be the agent of the owner, or lessee, or bailee, of the motor vehicle unless the driver shall have furnished proof of financial responsibility * * * prior to the accident * * *."

It is our conclusion that because the statute holds the automobile owner monetarily liable unless the driver "shall have furnished proof of financial responsibility[,]" the manifest purpose of § 31–33–6 is to ensure that a victim of a car injury has an avenue of recovery.

Although the intent of § 31–33–6 is fairly clear, the statute itself provides no explicit guidance on the issue of whether the term "accident" encompasses intentional acts. It is our task "in interpreting a legislative enactment to determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent

---

**1.** At trial, the parties stipulated that "the action of Richard Cinquegrana in striking, using the 1993 Nissan Maxima to strike the motorcycle and person of the Plaintiff, Michael Diaz [*sic*] was intentional."

**2.** The complaint originally only named Richard J. Cinquegrana, the operator of the Nissan Maxima, and Nissan Motor Acceptance Corporation as defendants, but plaintiff amended his complaint on November 4, 1994 to add defendant

Virginia Cinquegrana, who is Richard's mother and the lessee of the vehicle.

**3.** At the conclusion of the trial, Nissan Motor Acceptance Corporation (Nissan) moved for entry of judgment as a matter of law on its behalf pursuant to Rule 50 of the Superior Court Rules of Civil Procedure. The plaintiff did not object, and the motion was granted as to Nissan.

with its policies or obvious purposes." *Brennan v. Kirby*, 529 A.2d 633, 637 (R.I.1987). In doing so, we must not interpret a statute in a manner that would " 'defeat the underlying purpose of the enactment.' " *Matter of Falstaff Brewing Corporation; Re: Narragansett Brewery Fire*, 637 A.2d 1047, 1050 (R.I.1994). Where the language of a statute is ambiguous, we must make an interpretation grounded in policy considerations.

After careful review, we hold that the term "accident" includes intentional acts, an interpretation that, of course, is a broad one, but one that we believe is consistent with the purpose of § 31–33–6, namely, to protect an innocent victim from having to shoulder the expense of an injury. On the facts of this case and under Rhode Island law as it presently stands, it is our opinion that the owner of a car is responsible under the statute for the acts of its agent even when the agents act is an intentional one.

The trial justice in the instant case relied on *State v. Smyth*, 121 R.I. 188, 191–92, 397 A.2d 497, 499 (1979), in which this Court interpreted the word "accident" as it was used in the statute requiring a participant in a highway accident to render aid to persons injured in the collision.[4] We determined that "the Legislature intended the term 'accident' to include all automobile highway collisions—intentional as well as unintentional—where personal injury occurs." *Id.* at 192, 397 A.2d at 499. We agree with the trial justice that *Smyth* is persuasive authority on the question presented in this case. Additionally, in *General Accident Insurance Company of America v. Olivier*, 574 A.2d 1240 (R.I.1990), this Court cited favorably a case, *Government Employees Insurance Co. v. Novak*, 453 So.2d 1116 (Fla.1984), in which the Supreme Court of Florida reasoned that viewed from the perspective of the injured party, an intentional shooting constituted "a most unexpected and unfortunate accident." *Olivier*, 574 A.2d at 1242. Likewise, in the instant case, viewed from plaintiffs perspective, the collision was "a most unexpected and unfortunate accident."

Consequently, there is no reason why plaintiff should be precluded from recovering under the circumstances of this case. We point out that this decision affects the liability of a vehicle owner for the acts of the driver under § 31–33–6; it does not delineate what is or is not covered under any particular insurance policy.

In conclusion, therefore, we deny and dismiss the appeal and affirm the judgment of the Superior Court.

---

**4.** The statute at issue in *State v. Smyth*, 121 R.I. 188, 397 A.2d 497 (1979) was G.L.1956 § 31–26–