DECISION
This matter is before the Court on the appeal of Jack Lefcourt and Richard Foreman ("Appellants") from a decision of the Town of New Shoreham Zoning Board of Review ("Zoning Board" or "Board"). The Board's decision issued September 25, 2008, granted Judith E. Clark's ("Clark") appeal of a zoning notice violation. The Board granted Clark's appeal pursuant to an "incidental to construction" exception contained in the Town of New Shoreham Zoning Ordinance ("the Ordinance"). Appellants maintain the Board improperly construed the exception when it allowed a "trade trailer" or "utility trailer" on Clark's property so long as she uses the trailer in conjunction with her painting business. Appellants filed the instant, timely, appeal to this Court on October 1, 2008. Jurisdiction in this Court is pursuant to G.L. 1956 § 45-24-69.
 I Facts and Travel
Clark owns real property located at 1068 Beacon Hill Road, in the Town of New Shoreham[1] ("Town"), Rhode Island, designated as Assessor's Plat 18, Lot 32. Appellants are *Page 2 
residents of 1069 Beacon Hill Road and 1833 Beacon Hill Road, Assessor's Plat 18, Lots 33:1 and 33:2. The two lots abut on the southern portion of Clark's property.
In June 2008, a dispute between the Appellants and Clark arose when Clark began constructing a fence on her property without obtaining a building permit. After receiving a complaint from the Appellants about the fence, New Shoreham's Building Official and Zoning Enforcement Official, Marc Tillson ("Tillson"), went and inspected the fence. During the inspection of the fence Tillson noticed a 1964 Shasta trailer on Clark's property, which he believed violated the Ordinance. On June 11, 2008, Tillson wrote Clark a letter issuing a notice of violation that stated:
 When I inspected the fence I noticed that you have placed a trailer on your property approximately twenty feet from the fence. The trailer has a kitchen, and I observed bedding on the floor.
 The Town's Zoning Ordinance Section III, General Prohibitions (3) prohibits "trailers or mobile homes for human habitation or an accessory use, except incidental to construction." Please remove the trailer from your property within ten (10) days of the date of this letter.
 If you should feel aggrieved by this decision, you may appeal to the Zoning Board of Review within twenty (20) days of the date of this letter.
On June 23, 2008, Clark appealed Tillson's decision to the Board. As part of her appeal Clark submitted a letter stating, "I have purchased a trailer that was previously a small vintage camper with the purpose of recycling it into my painting utility trailer." According to Clark, the "bedding" Tillson had seen in the trailer was "(drop clothes) as the glue from the old flooring was annoying while I was inside working on it." In addition to her letter, Clark attached the state registration for a 1964 Shasta trailer bearing VIN #P297, which was registered to her on May 21, *Page 3 
2008. Photographs Clark submitted to the Board indicate the trailer is white and has at least two windows and a door.
On August 25, 2008, the Board heard Clark's appeal of the notice of violation issued by Tillson. At the proceeding the Board heard testimony and received evidence. Tillson testified he had received numerous complaints from both Clark and the Appellants about the various activities occurring on their respective properties. (Tr. Notice of Violation Appeal at 5.) However, Tillson testified the dispute at bar arose when Clark began construction of a fence on her property without obtaining the appropriate building permit.Id. Tillson explained that after construction of the fence began he received a complaint from the Appellants about the fence, and also noted the police responded to complaints about the fence on two separate occasions. Id. Additionally, Tillson stated the Sergeant of the Police Department asked Tillson if he could step in and try to resolve the problem between the neighbors. Id. As a result, Tillson testified he went out to Clark's property to inspect the fence, but while on Clark's property he noticed a trailer within twenty feet of the fence. Id. at 7. After observing what he believed to be bedding inside the trailer Tillson issued the notice of violation because he believed, "it could have been used for human habitation." Id. at 7-8. Although Tillson had not been out to Clark's property to conduct a follow-up inspection, he testified the trailer had not moved since he conducted his investigation.Id. at 8, 12.
Clark testified she purchased the trailer with the intention of converting it into a "utility trailer" for her construction painting business, and that no one was living in it. Id. at 13-14. Clark submitted photographs to the Board which showed she removed the bed assembly, the flooring, the stove, and the toilet from inside the trailer. Clark further testified that when her renovation was complete she intended to keep her paints, brushes, power washer, and ladders *Page 4 
inside the trailer. Id. at 16. However, she also testified that the trailer would not remain on her property permanently.Id. at 17. Clark stated, "I will take [the trailer off the property] when I need it. I don't know when I'll need it, it depends on the job. If the job is small, I wouldn't take it. If the job is larger and it takes more time, then I need all the stuff that I have, I would take it." Id. at 18. Prospectively, once the trailer was at a construction site Clark "would leave it there `till [she] was finished with the job." Id. at 20. Although she was uncertain as to exactly how frequently the trailer would be on her property, Clarke testified she generally had ten to fifteen large jobs over the course of a year. Id. at 18.
After hearing testimony and reviewing the various pictures of the trailer, the Board voted to reverse Tillson's decision and allow Clark to keep the trailer on her property. The Board issued the following findings of fact:
 1. Building Official Marc Tillson, in a letter dated June 11, 2008, required Judith E. Clark to remove a trailer from Plat 18, Lot 32.
 2. Ms Clark has appealed that decision testifying that the trailer is being converted to a utility trailer solely for use in her painting contracting business, said trailer to be moved from job site to job site, as required to support her painting contracting business.
 3. The trailer is a State of Rhode Island registered vehicle.
 4. Ms Clark stated, and photos introduced at the hearing show, that the kitchen and toilet formerly located within the trailer have now been removed.
 5. Article 1-Section 111 A. 3. of the Zoning Ordinance provides an exception allowing trailers incidental to construction and there are many trailers being used similarly around the Island.
The Board's decision allowed Clark to keep the trailer on her property subject to two conditions. First, Clark can use the trailer in connection with only her painting business. Second, the trailer cannot be used for human habitation or for any storage, other than for storage of Clark's supplies incidental to her contracting business and needed on job-sites. *Page 5 
On appeal, the Appellants argue the Board committed an error of law when it construed the "incidental to construction" language of Section 111(A)(3) of the Ordinance to permit Clark to keep the trailer on her property.
 II Standard of Review
Rhode Island General Laws 1956 § 45-24-69 provides this Court with the specific authority to review decisions of town zoning boards. Under § 45-24-69(d), this Court has the power to affirm, reverse or remand a zoning board decision. In conducting its review, "[t]he court shall not substitute its judgment for that of the zoning board . . . as to the weight of the evidence on questions of fact." § 45-24-69(d). This Court may reverse or modify the zoning board's decision only "if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Id.
Judicial review of administrative action, including zoning decisions, is "essentially an appellate proceeding." Notre DameCemetery v. Rhode Island State Labor Relations Bd.,118 R.I. 336, 339, 373 A.2d 1194, 1196 (1977); see alsoMauricio v. Zoning Bd. of Review of the City ofPawtucket, 590 A.2d 879, 880 (R.I. 1991).
As to this Court's review of a zoning board's factual findings, the Superior Court "lacks [the] authority to weigh the evidence, to pass upon the credibility of witnesses, or to substitute *Page 6 
[its] findings of fact for those made at the administrative level."Restivo v. Lynch, 707 A.2d 663, 665 (R.I. 1998) (quotingLett v. Caromile, 510 A.2d 958, 960 (R.I. 1986)). Rather, the trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings."DeStefano v. Zoning Bd. of Review of Warwick,122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979). "Substantial evidence is relevant evidence that a reasonable person would accept as adequate to support the board's conclusion and amounts to `more than a scintilla but less than a preponderance.'" Lischio v. ZoningBd. of Review of the Town of North Kingstown,818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. GeorgeSherman Sand and Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981)). In short, a reviewing court may not substitute its judgment for that of the board's if it "`can conscientiously find that the board's decision was supported by substantial evidence in the whole record.'" Mill RealtyAssocs. v. Crowe, 841 A.2d 668, 672 (R.I. 2004) (quotingApostolou v. Genovesi,120 R.I. 501, 509, 388 A.2d 821, 825 (1978)).
Appellate courts review questions of statutory interpretationde novo. Tanner v. Town Council,880 A.2d 784, 791 (R.I. 2005). A zoning board's determinations of law "are not binding on the reviewing court; they `may be reviewed to determine what the law is and its applicability to the facts.'" Gott v. Norberg, 417 A.2d 1352, 1361 (R.I. 1980) (quoting Narragansett Wire Co. v. Norberg,118 R.I. 596, 607, 376 A.2d 1, 6 (1977)).
Under Rhode Island law, "the rules of statutory construction apply equally to the construction of an ordinance." Mongony v.Bevilacqua, 432 A.2d 661, 663 (R.I. 1981). When construing statutes, this Court will not interpret statutory schemes in such a manner as to reach an absurd result. See Peck v. Jonathan MichaelBldrs., Inc., 940 A.2d 640, 643 (R.I. 2008). The paramount goal in statutory interpretation is to ascertain the intent behind the enactment of the *Page 7 
statute and effectuate that intent when lawful. See State v.Badessa, 869 A.2d 61, 65 (R.I. 2005). If the language of a statute is clear and unambiguous, the Court will give the words their plain and ordinary meaning. Park v. Rizzo Ford, Inc.,893 A.2d 216, 221 (R.I. 2006). If the language of a statute is unclear and ambiguous the Court will attempt to "establish[] and effectuate[] the legislative intent behind the enactment."State v. Fritz, 801 A.2d 679, 682 (R.I. 2002). Additionally, if the "provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency, or board, charged with its enforcement is entitled to weight and deference, as long as that construction is not clearly erroneous or unauthorized." Pawtucket Transfer Operations, LLC v. City ofPawtucket, 944 A.2d 855, 859-60 (R.I. 2008) (citingFlather v. Norberg,119 R.I. 276, 283 n. 3, 377 A.2d 225, 229 n. 3 (1977)). Deference is given because, "a zoning board of review is presumed to have knowledge concerning those matters which are related to an effective administration of the zoning ordinance." Monforte v. Zoning Boardof Review of East Providence,93 R.I. 447, 449, 176 A.2d 726, 728 (1962).
 III Analysis
The dispute between the parties centers on the appropriate interpretation of Article 1, Section 111 of the Ordinance. Article 1, Section 111 of the Ordinance prohibits the following uses in all zoning districts:
 A. Any structure or building or any use of any structure, building, premises or land which is injurious, obnoxious, offensive, dangerous or a nuisance to the community or to the neighborhood through noise, vibration, concussion, odors, fumes, smoke, gases, dust, harmful fluids or substances, danger of fire or explosion, or other objectionable features detrimental to the community or neighborhood health, safety, convenience, morals or welfare, including but not limited to the following: . . . *Page 8 
 3. trailers or mobile homes for human habitation or any accessory use, except use incidental to construction; . . .
 23. all temporary and/or mobile facilities for residential, commercial or industrial use or storage (unless authorized under Section 112).
The Appellants argue the Board's decision is unsupported by the record evidence because the Board improperly construed the Ordinance. Specifically, Appellants contend the Board completely ignored Section 111(A)(23) when the Board determined Clark's use of the trailer was "incidental to construction" under Section 111(A)(3). According to the Appellants, the Ordinance permits a trailer on an individual's property only if it is incidental to the construction of that individual's home. Conversely, Clark argues the Board properly construed "incidental to construction" to include her use of the trailer as a "utility trailer" or "trade trailer" for her painting business, which she could properly store on her property when not at a work-site.
Article 2, Section 202(A)(128), defines "mobile home" as "a structure designed as a dwelling unit for residential purposes, capable of being moved on its own wheels and fixed to a permanent foundation." However, Article 2, Section 202, does not define the words "trailer" or "mobile facility." Without any definitional guidance from the Ordinance, this Court is required to give the words their plain and ordinary meaning. See Park,893 A.2d at 221. As such, this Court accepts the definition provided by G.L. 1956 § 31-1-5(c), which defines a trailer as, "every vehicle without motive power, other than a pole trailer, designed for carrying persons or property and for being drawn by a motor vehicle, constructed so that none of its weight rests upon the towing vehicle." Additionally, the Court defines mobile as, "movable; not firm, stationary, or fixed" and facility to mean, "a building, special room, etc. that facilitates or makes possible some activity." Webster's New Universal Unabridged Dictionary 1153 (1983); Webster's New World Dictionary of the American Language 501 (1970). *Page 9 
After giving Section 111(A)(23) its plain and ordinary meaning, this Court is unable to read the provision as anything other than an all-encompassing ban on any kind of mobile storage unit. Section 111(A)(23)'s restriction against any "mobile facilities for residential, commercial or industrial use or storage" clearly envisions a general prohibition of any trailers or mobile homes. However, Section 111(A)(3) contains an exception to this general prohibition against trailers or mobile homes if their use is "incidental to construction." Thus, it is evident the Ordinance sets up a general prohibition and a specific exception, which are in direct conflict with each other. Rhode Island General Laws 1956 § 43-3-26 provides:
 [w]herever a general provision shall be in conflict with a special provision relating to the same or to a similar subject, the two (2) provisions shall be construed, if possible, so that effect may be given to both; and in those cases, the special provision shall prevail and shall be construed as an exception to the general provision.
It is clear the "preference is for the court to construe the statutes so that both may be given effect." Park v. Ford MotorCo., 844 A.2d 687, 694 (R.I. 2004) (citation omitted). As such, the Court reads the provisions of Article 1, Sections 111(A)(3) and 111(A)(23) together.
Reading the two provisions together it is clear the only permitted use of any type of mobile unit under the Ordinance is one which is "incidental to construction."[2] Giving the words their plain and ordinary definition incidental means "happening or likely to happen as a result of or in connection with something more important" or "secondary or minor." Webster's New Universal Unabridged Dictionary 922 (1983). Construction is defined as "the act or process of *Page 10 
building, or of devising and forming; fabrication; erection."Id. at 392. In this context, and mindful of Section 111(A)(23)'s general prohibition on trailers, the Court is satisfied the Ordinance permits a trailer on an individual's property during the construction or renovation of a home, or when used as a substitute residence during construction or renovation.[3] During the course of construction of a new home, or the renovation of an existing residence, a trailer to hold materials, tools, and supplies is undoubtedly a "secondary or minor" necessity of the undertaking. Moreover, in the event of fire, windstorm, flooding, hurricane, or other natural disaster a trailer or mobile home as a substitute residence during the construction repair is a "secondary or minor" need following the casualty. Such an interpretation gives effect to Section 111(A)(3) and respects 111(A)(23)'s general prohibition, and thereby maintains the integrity of each provision of the Ordinance.
Clark urges the Court to read "incidental to construction" to allow individuals to keep trailers on their property if used in conjunction with their trade or business. However, it cannot be said the storage a "utility trailer" or "trade trailer" "is likely to happen as a result of" or "secondary or minor" to "the act or process of building, or of devising and forming; fabrication; erection" at another location. After a job is completed no "building, devising, forming, fabrication, or erection" occurs while the trailer sits idly on an individual's residence.Id. at 392, *Page 11 
922. Put simply, no construction occurs, and no construction is ongoing, when a trailer is not at a job-site.
Moreover, such a reading is clearly in conflict with Section 111(A)(23)'s prohibition on trailers for "commercial or industrial use or storage." Indeed, were the Court to adopt Clark's proposed reading of the Ordinance, Section 111(A)(23)'s general prohibition on trailers is rendered a virtual nullity. In addition to exceptions for renovation, new construction or substitute housing, Clark's reading allows any individual engaged in a business or trade to maintain and store a trailer on their property for an indefinite period of time. Quite apart from the limited timeframe envisioned by exceptions for home construction, renovation, or substitute housing, exceptions based upon business or trade practice are potentially limitless in duration. This interpretation effectively eviscerates provision Section 111(A)(23) from the Ordinance and renders it inoperative. As Clark correctly points out, there would be no dispute if the Ordinance read "incidental to construction trade" or "incidental to construction by the owner," but the Ordinance does not. Although the Court gives deference to the Board's interpretation of an ordinance it administers when consistent with the ordinance's language, this Court will not adopt an interpretation contrary to the express plain and ordinary meaning of the ordinance. See Unistrut Corp. v. State Dept. of Labor andTraining, 922 A.2d 93, 99 (R.I. 2007) ("when a statute is clear and unambiguous, we are not required to give any deference to the agency's reading of the statute").
Further, providing the terms with their plain and ordinary meaning is consistent with achieving the stated goals of the Ordinance. Article 1, Section 102(C)(1) states one of the purposes of the Ordinance is to achieve "[t]he goals and patterns of land use contained in the Comprehensive Plan." The Town of New Shoreham Comprehensive Plan's ("the Plan") stated *Page 12 
objective is to "influence and manage growth adequately to preserve the community and culture and character that has been the hallmark of Block Island for generations." (Comprehensive Plan at 1.) Moreover, one of the goals of the Plan is that "[t]he ultimate amount of development, together with its location, qualities, and management, should be controlled so that no environmental or service system's fundamental carrying capacity or sustainability is threatened." (Comprehensive Plan at 14.) The New Shoreham Town Council's ("Town Council") adoption of Article 1, Section 111(A)(3) and 111(A)(23) is clearly responsive to the concern of avoiding over-development. Prohibiting all trailers, mobiles homes, and mobile facilities for residential, commercial, or industrial use, subject to certain limited exceptions, allows the Town Council to maintain strict control over the amount of growth occurring on Block Island. Additionally, restricting these vehicles from Block Island allows the Town Council to maintain the scenic "culture and character that has been the hallmark of Block Island for generations." (Comprehensive Plan at 1.) This Court refuses to adopt a reading of the statute that is plainly at odds with the Town Council's intent in passing the Ordinance. See Dias v.Cinquegrana, 727 A.2d 198, 199-200 (R.I. 1999) (noting it is the court's goal to determine and effectuate the legislature's intent).
Additionally, this Court finds it instructive that amendments with a potentially dispositive effect on the case at bar have already been considered and rejected by the Town Council. On March 2, 2009, the Town Council held a public hearing to consider amending the Ordinance's sections currently before the Court. Specifically, the Town Council considered changing Article 1, Section 111(A)(3) to read, "[t]railers or mobile homes for residential or residential accessory use, except on a day-use (non-habitation) basis by a contractor in association with a construction job site, or on a temporary living basis by a resident under the provisions of Section 112." *Page 13 
Additionally, the proposed amendments also altered Section 111(A)(23) to read, "[t]he parking or use of trailers, shipping containers and similar temporary and/or mobile facilities for any commercial or industrial activity or storage, with the exception of trades trailers, as provided for in Section 516." Finally, the amendments also proposed adding a new Section to the Ordinance entitled "Section 516-Traders Trailers" which read:
 A. General Standards: Commercially used enclosed trailers which provide for the storage and transport of equipment and supplies related to the building and other trades are permitted, provided that any such trailer:
 1. Is currently registered as a commercial vehicle;
 2. Is equipped with wheels so that it is transportable by towing;
 3. Does not include interior plumbing fixtures;
 4. Does not exceed eight (8) feet in width nor twenty-four (24) feet in length; and
 5. Is able to be entirely closed so that the contents are not visible when not in use.
 B. Identification: Trades trailers shall be identifiable from the exterior by either the business name or the Rhode Island license number for the business. Any building contractor making use of a trades trailer shall include either the contractor's registration number or the building trade's license number on the exterior of the trailer.
 C. Use Standards: (sic) Such trailers may be in place or use at any location, including the owner's residence, but shall be used only for storage and transport, and on-site construction activity. No more than one such trailer shall be allowed on a contractor's resident property.
These amendments clearly evidence an intention to provide for the type "trade trailer" or "utility trailer" currently before the Court. However, the Town Council elected not to adopt the proposed amendments and elected to maintain the status quo. Although the Court may prefer the Ordinance provide for "trade trailers" or "utility trailers," it is not the province of this Court to substitute its judgment for the legislature. See Parella v.Montalbano, 899 A.2d 1226, 1256 (R.I. 2006) *Page 14 
(refusing to "pit two plans against one another and find which one is better" and "second guess the legislature"). Therefore, this Court finds the Ordinance allows trailers on an individual's property only during the construction or renovation of a home, or while being used as substitute residence during the construction or renovation of a home; however, after the construction ends the trailers cannot be stored on Block Island.
As a result, this Court holds the Board violated the Ordinance provisions when it allowed Clark to maintain a trailer on her property under the "incidental to construction" exception. Nothing in the record indicates Clark was conducting any type of construction on her premises at the time she appealed Tillson's decision. Indeed, Clark's own testimony indicates her sole goal is to use the trailer in conjunction with her painting business. Thus, the Court finds the Board's decision reversing Tillson's notice of violation was made in violation of law, contrary to the Ordinance, and constituting an abuse of discretion.
The Court is mindful of the hardship the Ordinance, as written, places on contractors who reside on Block Island. The Ordinance allows a contractor to bring a trailer to a construction site to do work, but leaves the contractor without a location to store the trailer on the island once the job is completed. Consequently, contractors residing on Block Island must remove their trailers from Block Island every time a job is finished, and pay the expense associated with transporting the trailer. Further, once off Block Island, the contractor will need to find a suitable location to store the trailer, and likely incur a storage related expense. As a result, the Ordinance works a distinct burden against contractors who reside on Block Island, and likely increases the cost associated with obtaining contracting work to all residents of Block Island. As the Plan itself recognizes, "[t]ransporting everything consumed here but not grown or made here has a transportation penalty, just as making things here for use elsewhere is penalized by transport *Page 15 
costs and availability." (Comprehensive Plan at 2.) For the reasons previously mentioned, the Ordinance increases the cost of construction services by requiring a contractor to transport and store a trailer off Block Island, a cost likely to be passed on to Block Island's residents. Therefore, the Ordinance is a disadvantage not only to resident contractors, but also any resident requiring a contractor's services on Block Island.
Residents aggrieved by the Court's decision are free to alter the Ordinance by lobbying the Town Council. "Members of the legislative and executive branches are directly accountable to the electorate, and such responsibilities as the allocation of property tax burdens and general state levies are best dealt with through the political process, incorporating informed decisions at the state and local levels." City of Pawtucket v. Sundlun,662 A.2d 40, 62 (R.I. 1995). Similarly, under Rhode Island law, significant power is vested in local bodies to adopt zoning alterations, because localities are best suited to make informed decisions on the uses allowed in a community. See
G.L. 1956 § 45-24-29.[4] As the amendments proposed on March 2, 2009 evidence, the predicament Block Island residents and contractors currently face is readily curable. However, it is up to the residents of New Shoreham to determine whether or not they will allow "trade trailers" or "utility trailers" to be stored on Block Island. *Page 16 
 IV Conclusion
Based on the foregoing, the decision of the Board granting Clark's appeal from Tillson's notice of violation is reversed. After a review of the evidence, the Court finds the Board's decision unsupported by the evidence on the record, in violation of law, contrary to the Ordinance, and an abuse of discretion.
Counsel shall submit an appropriate order for entry in accordance with this Decision within ten (10) days.
[1] The Town of New Shoreham is the only town on Block Island. As such, the Court uses the two terms interchangeably throughout the opinion.
[2] The Court notes Section 111(A)(23) also contains an exception for mobile facilities "authorized under Section 112." Section 112 allows the Town Council to grant permits "in circumstances of emergency or other urgent necessity for the public health and safety" "only for [a] use or purpose that cannot be accomplished by compliance with the provisions of the ordinance." Assuming arguendo, a trailer or mobile facility being used for a business purpose could satisfy these requirements, Section 112 allows these permits to last for "six (6) months, however, that upon similar application one additional period of six (6) months may be allowed in accordance with these provisions." Thus, Section 112 grants these special use permits for no more than a year, which would not be suitable for an individual attempting to operate a construction business that necessitated a trailer or mobile facility.
[3] Section 112 also contains an exception for a:
 temporary building or yard for construction materials and/or a temporary trailer used for residential occupancy necessitated by any loss or damage of a principal structure by fire, hurricane or other natural disaster shall be permitted in any district subject [to] approval by the Building Official provided, that any building permit for any such temporary use shall be valid for not more than six (6) months unless such time period is extended by the Building Official, for on additional six (6) month period, for good cause.
Thus, the Court is mindful the Ordinance clearly permits an individual to use a trailer or mobile facility as a substitute residence after a casualty loss stemming from a natural disaster.
[4] § 44-24-29 provides in pertinent part:
 (b) Therefore, it is the intent of the general assembly:
 (1) That the zoning enabling authority contained in this chapter provide all cities and towns with adequate opportunity to address current and future community and statewide needs; . . .
 (3) That the zoning enabling authority contained in this chapter empower each city and town with the capability to establish and enforce standards and procedures for the proper management and protection of land, air, and water as natural resources, and to employ contemporary concepts, methods, and criteria in regulating the type, intensity, and arrangement of land uses, and provides authority to employ new concepts as they may become available and feasible.